UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>LOUIS DANIEL SMITH, also known as Daniel Smith, also known as Daniel Votino; KARIS DELONG, also known as Karis Copper; TAMMY OLSON; and CHRIS OLSON,<br><br>　　　　　　　Defendant. | CASE NO: CR-13-14- RMP-1<br><br>ORDER DENYING DEFENDANT SMITH'S MOTION TO DISMISS INDICTMENT FOR PROSECUTORIAL MISCONDUCT IN GRAND JURY PROCEEDINGS |

**BEFORE THE COURT** is Defendant Louis Daniel Smith's "Motion to Dismiss Indictment for Prosecutorial Misconduct in Grand Jury Proceedings," ECF No. 271. The motion was heard without oral argument. Defendant Smith is appearing *pro se* in this action. The Court has appointed Terrence M. Ryan as standby counsel for Mr. Smith. Christopher M. Parisi has appeared on behalf of

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 1

the Government. The Court has considered the motion and the file, and is fully informed.

BACKGROUND

Defendant Smith was indicted on January 25, 2013, along with co-defendants Karis Delong, Chris Olson, and Tammy Olson. Defendant Smith was charged in the Indictment with one count of conspiracy in violation of 18 U.S.C. § 371; four counts of delivering misbranded drugs into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); and one count of smuggling in violation of 18 U.S.C. § 545. The indictment generally alleges that the Defendants misbranded a solution of sodium chlorite and water and marketed it as a Miracle Mineral Solution ("MMS") for consumption to cure such ailments as malaria, HIV/AIDS, hepatitis, and various forms of cancer. ECF No. 1.

In the instant motion, Defendant Smith alleges that the prosecution engaged in misconduct before the grand jury in order to secure the Indictment against Smith and his codefendants. Defendant Smith complains of a portion of Special Agent Da Li Borden's testimony before the grand jury on January 23, 2013, where the Government's attorney, Mr. Parisi, elicited testimony about how FDA investigators came to be interested in the Defendant's company, Project Greenlife. The following colloquy occurred in response to Mr. Parisi's question:

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 2

1     A.    [SPECIAL AGENT BORDEN]  Project Greenlife was originally flagged by FDA back in Washington, D.C. at our headquarters level because of their claims on the internet regarding using MMS for the H1N1 virus.  The special section that reviews internet websites started monitoring them and then started getting reports of complaints of adverse events related to MMS, so we had received several of those.

    And then, approximately in 2010 there had been a complaint that had come through the State Department regarding the death of a U.S. citizen over in Vanuatu, which is a small island nation out in the Pacific, that was related to MMS.

    Q:    [MR. PARISI]  Now, based on your investigation do you have any concrete, solid evidence that MMS caused that individual's death?

    A:    No.  The autopsy was inconclusive, so we have not gone forward with this investigation looking at MMS as a cause of that death.

    Q:    I take it it was just a complaint that this individual had consumed MMS and then had died, but there wasn't necessarily a medical link between the two?

    A:    I think the medical link was not proved due to a variety of circumstances, length of time till there was an autopsy, things like this.  His death occurred actually on a vessel out in the middle of the Pacific, so by the time Australian authorities were able to conduct an autopsy I think there was a lot of deterioration and they were unable to provide a specific cause of death.

    MR. PARISI:  Members of the Grand Jury, I'll just give you a quick caution there.  We're offering that information just to explain why the FDA got involved.  We do not intend to present you any evidence that there was a link between that, nor are we suggesting that you should consider that when you consider the evidence that we are presenting.  It's just kind of some background for you.

ECF No. 271, Ex. B.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 3

Defendant Smith additionally complains that Special Agent Borden was asked a similar question regarding the background of the investigation during her September 7, 2011, testimony before the grand jury, and that in that earlier grand jury testimony Special Agent Borden did not offer information about a death off the coast of Vanuatu allegedly connected to MMS.  ECF No. 277, Ex. C.

The Government has indicated in a separate post-Indictment filing before this Court that "[a]lthough there is evidence MMS manufactured by the defendants was consumed by the deceased, the government has never alleged that the defendants' product or conduct caused the death."  The Government additionally stated that the Vanuatu incident "has never formed any part of the proof the government relies on in this case."  The Government thus initially chose not to disclose evidence related to the State Department's investigation into the Vanuatu death in discovery because it considered such information to be "irrelevant and inadmissible at trial."  ECF No. 277, Ex. A.[1]

## DISCUSSION

The basis of Defendant Smith's motion to dismiss for prosecutorial misconduct is that the testimony Mr. Parisi elicited from Special Agent Borden regarding the Vanuatu death "was substantially hearsay non-expert 'medical'

---

[1] The Government ultimately provided such discovery in response to a defense motion.  ECF No. 277, Ex. A.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 4

opinion known by the government from the beginning to be irrelevant, highly prejudicial, and entirely inadmissible at trial." ECF No. 277 at 7. Defendant Smith thus asks the Court to dismiss the Indictment pursuant to its inherent supervisory powers.

Dismissal of an indictment is "considered a 'drastic step' and is generally disfavored as a remedy." *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (quoting *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993)); *see also United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979) ("The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked."). An indictment may be dismissed pursuant to the court's supervisory powers "only in flagrant cases of prosecutorial misconduct." *United States v. De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986).

Defendant Smith contends that the prosecutor engaged in flagrant misconduct by presenting Special Agent Borden's testimony regarding the Vanuatu death to the grand jury on January 23, 2013. The Court does not agree that flagrant misconduct occurred.

To the extent that the prosecutor simply asked Special Agent Borden to explain to the jury why the FDA had become concerned about the sale of products like the "Miracle Mineral Solution," it was entirely proper for Special Agent Borden to relate the FDA's knowledge of suspected health issues related to those

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 5

problems. The Court notes that Mr. Parisi specifically elicited testimony acknowledging that there was no direct link between MMS and the individual's death, and Mr. Parisi additionally admonished the jury that the Government had not introduced the evidence to suggest a link between MMS, Project GreenLife, and the Vanuatu death. ECF No. 271, Ex. B.

The facts of the Government's conduct here thus stand in stark contrast to the conduct at issue in the case upon which the Defendant primarily relies: *United States v. Samango*, 607 F.2d 877 (9th Cir. 1979). In *Samango*, the prosecutor gave the grand jury lengthy and misleading transcripts of testimony from previous grand juries without warning them of a key witness's "doubtful credibility." In addition, the prosecutor engaged in what the Ninth Circuit described as "an impressive repertory of insults and insinuations" during the defendant's testimony for no other purpose than "calculated prejudice." Moreover, the grand jury was given a short decision deadline which discouraged a thorough and independent evaluation of the evidence. *Id.* at 881-83. The Ninth Circuit found in *Samango* that "[t]he cumulative effect of the above errors and indiscretions, none of which alone might have been enough to tip the scales, operated to the defendants' prejudice by producing a biased grand jury." *Id.* at 884; *see also De Rosa*, 783 F.3d at 1406 (finding no flagrant misconduct where the prosecutor committed isolated errors

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 6

1  that may have led the grand jury to believe the defendant faked a disability despite
2  an undisclosed acquittal on a related charge).

3  In this case, any misconduct that may have occurred was isolated and at least
4  partially corrected by testimony that the prosecutor took care to elicit.[2]  Such facts
5  are far removed from the showing of "flagrant misconduct" necessary to warrant
6  dismissal of the Indictment under the Court's supervisory powers.  In addition,
7  even if flagrant misconduct could be established, the Defendant has not shown that
8  he was prejudiced by the complained-of testimony.

9  An indictment may not be dismissed for prosecutorial misconduct without a
10  showing of prejudice to the defendant.  *Bank of Nova Scotia v. United States*, 487
11  U.S. 250, 255 (1988).  Thus, dismissal of the indictment is appropriate only where
12  "it is established that the violation substantially influenced the grand jury's
13  decision to indict" or where "there is 'grave doubt' that the decision to indict was
14  free from the substantial influence of such violations."  *Id.* at 256 (quoting *United
15  States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)).  Here,
16  Defendant Smith relies on the "grave doubt" theory for establishing prejudice.

---

[2]  Defendant Smith further argues that the prosecutor committed misconduct by presenting perjured testimony.  However, Special Agent Borden testified that investigators merely suspected a link between MMS and the Vanuatu death, and that there was no conclusive evidence actually establishing such a link.  Defendant Smith has not shown that it was perjury to testify that investigators considered a possible but unproven link.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 7

It is clear from the Indictment that a great deal of evidence was presented to the grand jury regarding the Defendants, Project GreenLife, and the Defendants' alleged actions of selling a misbranded drug, "Miracle Mineral Solution." ECF No. 1. The Vanuatu incident itself is not mentioned in the Indictment despite a lengthy recitation of other allegations on which the Indictment was based. *Id.* Moreover, the Defendants were not charged with any crime of causing actual harm to persons, but rather for conspiring to and actually distributing into interstate commerce a misbranded drug. *Id.*

In addition, the prosecutor admonished the grand jury following Special Agent Borden's testimony that the information was offered only "to explain why the FDA got involved" in investigating MMS as a criminal matter and that the Government did not intend to suggest "a link" between MMS, Project GreenLife, and the Vanuatu death. ECF No. 271, Ex. B. Such warnings "undoubtedly tended to neutralize the effect" of Special Agent Borden's testimony regarding the Vanuatu death. *See United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1392 (9th Cir. 1983); *see also De Rosa*, 783 F.2d at 1405 (nothing that it "would be difficult to find that one [improper] statement, when counterbalanced with the prosecutor's admonition, had significantly undermined the grand jury's ability to make an objective evaluation").

Because Defendant Smith has not established flagrant misconduct or prejudice, it would be improper to dismiss the indictment under the Court's supervisory powers based upon Special Agent Borden's testimony before the grand jury.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Louis Daniel Smith's "Motion to Dismiss Indictment for Prosecutorial Misconduct in Grand Jury Proceedings," **ECF No. 271**, is **DENIED**.

The District Court Clerk is directed to enter this Order and to provide copies to counsel and *pro se* Defendant Louis Daniel Smith.

**DATED** this 29th day of April 2014.

          *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
          Chief United States District Court Judge