1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    UNITED STATES OF AMERICA,

8                              Plaintiff,                    NO: CR-13-14- RMP-1

9          v.

10   LOUIS DANIEL SMITH, also known          ORDER DENYING DEFENDANT
     as Daniel Smith, also known as Daniel    SMITH'S MOTION TO DISMISS
11   Votino; KARIS DELONG, also known         INDICTMENT
     as Karis Copper; TAMMY OLSON;
12   and CHRIS OLSON,

13                              Defendant.

14

15       **BEFORE THE COURT** is Defendant Louis Daniel Smith's "Motion to

16   Dismiss [the Indictment] for Prosecutorial Misconduct Based Upon Prejudicial

17   Public Pretrial Statements," ECF No. 277.  The motion was heard without oral

18   argument.  Defendant Smith is appearing *pro se*. Terrence M. Ryan has been

19   appointed as standby counsel.  Christopher Eric Parisi represents the Government.

20   The Court has considered the briefing and the file and is fully informed.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 1

BACKGROUND

Defendant was indicted in January of 2013 along with codefendants Karis Delong, Tammy Olson, and Chris Olson, and charged with one count of conspiracy in violation of 18 U.S.C. § 371; four counts of delivering misbranded drugs into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); and one count of smuggling in violation of 18 U.S.C. § 545.  ECF No. 1.  The Indictment alleges that the defendants engaged in a scheme to import, manufacture, and sell hazardous material that was marketed as a health product.  *Id*.  Specifically, the Indictment alleges that Defendant Smith misbranded sodium chlorite, a harmful chemical, as Miracle Mineral Solution ("MMS") and marketed it to the public for consumption to cure such ailments as malaria, HIV/AIDS, hepatitis, and various forms of cancer.  *Id*. at 4, 7.

In February of 2013, the Department of Justice ("DOJ") issued a press release announcing the Indictment entitled *Four Charged with Internet Sales of Industrial Bleach as Miracle Cure*.  ECF No. 277, Ex. A.  The press release listed each count Defendant Smith was charged with, summarized the alleged conduct, and quoted a DOJ official, Stuart F. Delery, about the Indictment.  *Id*.  The press release quoted Mr. Delery as stating "[t]he Department of Justice is committed to protecting the health and safety of people with cancer and other serious medical conditions . . . . Our most vulnerable citizens need real medicine – not dangerous

chemicals peddled by modern-day snake oil salesmen." *Id*.  According to the press release, the Indictment alleged that a business operated by Defendants Smith and Delong "provided consumers directions to combine MMS with citric acid to create Chlorine Dioxide." *Id*.  The press release further reported that "Chlorine Dioxide is a potent agent used to bleach textiles, among other industrial applications." *Id*.

The DOJ's press release ended with the caveat that "[c]harges contained in the indictment are simply accusations, and are not evidence of guilt," and that "[e]vidence supporting the charges must be presented to a federal trial jury, whose duty it is to determine guilt or innocence." *Id*.

ANALYSIS

Defendant Smith filed a motion to dismiss the indictment for prosecutorial misconduct based upon the contents of the DOJ press release.  ECF No. 277.[1] Defendant Smith relies on the prejudicial connotation of the phrase "snake oil salesmen," alleged inconsistencies between the Indictment and the press release, ABA and state rules of professional conduct, federal statutory and regulatory law, and the Universal Declaration of Human Rights.  The Court will liberally construe

---

[1]  In addition to the DOJ's press release, Defendant also contends that the Government's counsel, Mr. Parisi, made statements to an Oregon reporter that led to the publication of "numerous scathing articles about defendants."  ECF No. 277 at 14-15.  However the Defendant has provided no support for these allegations in the record.

Defendant Smith's motion because he is appearing *pro se*.  *See, e.g.*, *United States v. Johnson*, 988 F.2d 941, 943 (9th Cir. 1993).

Dismissal of an indictment with prejudice may be appropriate under one of two theories: first, the district court "may dismiss an indictment on the ground of outrageous conduct if the conduct amounts to a due process violations"; and second, the court may dismiss an indictment under its supervisory powers even where the conduct "does not rise to the level of a due process violation."  *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (quoting *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)).  Dismissal of the indictment constitutes a "drastic step" in either circumstance and is a "disfavored remedy."  *United States v. Rogers*, 751 F.2d 1074, 1076-77 (9th Cir. 1985).

**1.  Dismissal of the Indictment for Due Process Violation**

Governmental conduct violates due process when it "is so grossly shocking and so outrageous as to violate the universal sense of justice."  *Barrera-Moreno*, 951 F.2d at 1092 (quoting *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)).  Generally such a violation will be found where entrapment is an issue and only where the governmental conduct is wrong in itself or "amount[s] to the engineering and direction of [a] criminal enterprise from start to finish."  *See, e.g.*, *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).

Here, the relevant governmental conduct is the issuance of a press release about the Indictment in February of 2013. Defendant Smith generally claims that the press release violated his substantive and procedural due process rights because the "extrajudicial and subjective" statements were "disparaging and defamatory in nature." ECF No. 277 at 10. Defendant Smith centers this due process claim on the phrase "snake-oil salesmen" as articulated by Mr. Delery in the press release. ECF No. 277 at 10. To support this proposition, Defendant Smith offers seven pages of detailed and varied examples of the use of the phrase "snake-oil salesmen" in American culture. *Id*. at 3-10.

The Government's use of the phrase "snake oil salesmen" does not rise to the level of the outrage as required for a due process violation. As observed by the Ninth Circuit, outrageous government conduct is an extremely high standard, and "there are only two reported decisions in which federal appellate courts have reversed convictions under this doctrine." *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971)). In both cases, the outrageous conduct at issue was the improper nature and extent of police involvement in the crime later prosecuted. *See Twigg*, 588 F.2d at 379-80 (direct and continuous government involvement in criminal case constituted outrageous conduct); *Greene*, 454 F.2d at 787 ("We do not believe the Government may

involve itself so directly and continuously over such a long period of time in the creation and maintenance of criminal operations, and yet prosecute its collaborators.").

The press release at issue does not demonstrate conduct remotely similar to that which is necessary for establishing a due process violation. Therefore dismissal of the indictment is not appropriate on due process grounds.

### 2. Dismissal of the Indictment Pursuant to the Court's Supervisory Powers

Alternatively, Defendant Smith requests the Court to exercise its supervisory powers to dismiss the Indictment with prejudice.  ECF No. 277 at 26.  Mr. Smith asserts that dismissal is appropriate because the government published statements that were "patently false," "subjective," and "highly prejudicial."  ECF No. 277 at 19-20.

A district court's inherent supervisory powers may be exercised "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct."  *Chapman*, 524 F.3d at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991)); *see also United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (recognizing that the court may exercise its inherent powers

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 6

in other areas).  However, dismissing an indictment with prejudice is only proper

"in cases of flagrant prosecutorial misconduct" because such a remedy "encroaches

on the prosecutor's charging authority."  *Chapman*, 524 F.3d at 1085 (quoting

*Simpson*, 927 F.2d at 1091).[2]

Moreover, dismissal of the indictment under the court's supervisory powers

is appropriate only where the defendant suffers "substantial prejudice" and where

"no lesser remedial action is available."  *Id.* at 1087 (quoting *United States v.*

*Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988); *Barrera-Moreno*, 951 F.2d at 1092).  A

district court "ha[s] no authority to dismiss the indictment on the basis of

prosecutorial misconduct absent a finding that [the defendant] was prejudiced by

such misconduct."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263

(1988).

The Defendant does not rely on actual prejudice in arguing that the dismissal

of the Indictment is proper.  The press release could not have actually prejudiced

---

[2]  The Defendant contends that the Government engaged in flagrant misconduct by violating various rules of professional conduct, including the Washington State Rules of Professional Conduct; 28 U.S.C. § 530B, which mandates government attorneys are subject to the state laws and rules in each state he or she practices law; 28 C.F.R. § 50.2, which governs the release of information by DOJ personnel relating to criminal proceedings; and the Universal Declaration of Human Rights. However, the Court need not determine if the Government engaged in "flagrant prosecutorial misconduct" because, as discussed in this Order, the Defendant has not shown any resulting prejudice.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 7

the grand jury that returned the Indictment because the press release was issued

after the Indictment.  Nor could the Defendant establish actual prejudice at trial

since a petit jury has yet to be seated in the matter.  Thus the Defendant relies on

presumed prejudice from pretrial publicity.  ECF No. 277 at 10, 19.

The Court is not convinced that dismissal of the Indictment would be an

appropriate remedy even in the face of widespread prejudicial publicity.  The

Defendant has offered no authority showing that the drastic remedy of dismissal

would be appropriate under such circumstances.  In fact, the Defendant primarily

relies upon a case, *United States v. Lopez*, where the Ninth Circuit found that the

district court abused its discretion in dismissing the indictment for a different type

of prosecutorial misconduct: effectively depriving the defendant of his choice of

counsel.  *See* 4 F.3d 1455, 1463-64 (9th Cir. 1993).  In *Lopez*, the Ninth Circuit

found that the district court could have "act[ed] in an appropriate manner" to

discipline the prosecutor accused of misconduct, but "question[ed] the prudence of

remedying that misconduct through dismissal of a valid indictment."  *Id.*

Moreover, in an analogous situation the Ninth Circuit has found that

dismissal of an indictment is an improper remedy for allegations that the grand jury

returning an indictment was prejudiced by heavy pretrial publicity.  *See United*

*States v. Reed*, 726 F.2d 570, 578 (9th Cir. 1984); *Silverthorne v. United States*,

400 F.2d 627, 631-34 (9th Cir. 1968).  Other courts have noted the complete

absence of federal precedent for dismissing an indictment "no matter how widespread or prejudicial the publicity." *See, United States v. Poindexter*, 725 F. Supp. 13, 37 (D.D.C. 1989); *United States v. Finley*, 705 F. Supp. 1297, 1307 (N.D. Ill. 1988).  Typically, where the existence of extensive pretrial publicity may render a fair trial impossible, "the judge should continue the case until the threat abates, or transfer it to another county."  *E.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966).

Even if dismissal of the indictment could be an appropriate remedy for extensive pretrial publicity, the Defendant has not demonstrated presumed prejudice from pretrial publicity.  Prejudice may be presumed "when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime."  *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988) (citations omitted).  Presumed prejudice will be found only in "extreme" cases.  *Skilling v. United States*, 130 S. Ct. 2896, 2915 (2010); *see also Harris*, 885 F.2d at 1361 ("The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation." (Internal citation omitted)).

Defendant Smith cannot establish the first factor because he has not shown a "barrage of inflammatory publicity," yet alone that the publicity occurred "immediately prior to trial."  *Daniels*, 428 F.3d at 1211.  In arguing for

prosecutorial misconduct, Defendant Smith points to only one press release that was actually attributable to the Government.[3]  Moreover, the Government's press release was issued more than one year before trial is set to commence in the Defendant's case.  Therefore any bias that might have resulted from the press release will have likely dissipated by the time of the trial.  *See Harris*, 885 F.2d at 1362.

The second factor is concerned with whether the publicity was "primarily factual" in nature.  *Daniels*, 428 F.3d at 1211.  Defendant Smith argues that the Government's press release was not "primarily factual" because it contained false statements about the Indictment.  Specifically, Defendant Smith contends that the press release incorrectly characterized the Indictment as alleging (1) that the defendants were charged with the sale of "industrial bleach as a miracle cure"; (2) that the Defendants were charged with defrauding suppliers; (3) that the Defendants smuggled sodium chlorite into the United States "using fraudulent invoices to hide the true end use of the product"; (4) that Defendants Smith and Delong paid Defendant Chris Olson to "clandestinely manufacture MMS"; and (5)

---

[3]  Defendant points out that the press release has been reported elsewhere online, and that the press release and related articles remain available online for anyone who searches for them.  However, the Defendant has not shown that a substantial number of jurors in this district are likely to seek out articles about him, his co-defendants, or the allegations of the Indictment prior to the time when they are called for jury duty.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 10

1    that federal agents "shut down the Project GreenLife website and production

2    facilities."  ECF No. 277 at 11-12.

3            The Court has reviewed the Indictment and finds that it contained allegations

4    supporting each of the alleged "falsehoods" in the press release save one: that

5    federal agents "shut down the Project GreenLife website."  For example,

6    Defendant Smith claims that the Indictment did not allege that the Defendants

7    engaged in the sale of "industrial bleach as a miracle cure."  Yet the Indictment

8    alleges that the Defendants sold a product labeled the "Miracle Mineral Solution"

9    that was a mixture of sodium chlorite and water; that when sodium chlorite is

10   combined with citric acid, the resulting mixture produces chlorine dioxide: "a

11   potent agent used in bleaching and stripping of textiles, pulp and paper"; and that

12   the Defendants apparently sold a "Citric Acid Activator" in conjunction with the

13   sodium chlorite solution.  ECF No. 1 at 5, 17.  Likewise, the Indictment contains

14   allegations that the "Miracle Mineral Solution" was marketed as a cure for malaria,

15   HIV/AIDS, hepatitis, tuberculosis, and a variety of other ailments.  ECF No. 1 at 7,

16   12.  Thus the press release is "primarily factual," with the only real factual

17   inconsistency being the relatively minor assertion that "federal agents shut down

18   the Project GreenLife website."[4]

19   _____

20   [4] The Indictment actually alleged that Defendant Tammy Olson "established the website purestreamhealth.com after federal agents executed search warrants at various locations in Spokane, Washington related to the production and shipping of MMS."  ECF No. 1 at 15.

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 11

Turning to the third factor for presumed prejudice, Defendant Smith alleges that the phrase "snake oil salesman" as quoted in the press release constitutes prejudicial and inflammatory character evidence that would not be admissible at trial. Even if the Defendant is correct on this point, the Supreme Court has declined to find presumed prejudice in circumstances much more unfavorable to the defendant. *See Patton v. Yount*, 467 U.S. 1025, 1027-28, 1031-35 (1984) (finding no presumed prejudice in defendant's second trial where media reported on defendant's confession that was suppressed as evidence, on defendant's claim of temporary insanity at first trial, on defendant's conviction for first-degree murder and rape following first trial, and reversal of defendant's conviction on appeal from first trial). Moreover, the Defendant has not shown that the publicity was so inflammatory and prejudicial that no potential jurors could "reasonably be expected to shut it from sight." *Skilling v. United States*, 130 S. Ct. 2896, 2916 (2010) (providing a defendant's "dramatically staged confession of guilt" as an example of such prejudicial publicity); *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963). The Court finally notes that the press release noted that the Indictment contained only allegations, not evidence of guilt, and that a jury would ultimately be charged with determining guilt or innocence. ECF No. 277, Ex. A.

Thus, the Defendant has not shown that this is the rare and extreme case where prejudice should be presumed from pretrial publicity. Because the

Defendant has not shown prejudice, dismissal of the indictment under the Court's supervisory powers would be inappropriate even if the Defendant could establish that prosecutorial misconduct occurred.

In this case, the most effective means to eliminate any potential prejudicial effect arising from the press release or other pretrial publicity is through voir dire during jury selection.  The Court may ensure an impartial jury is obtained by examining prospective jurors on media reports they may have read regarding the case, whether originating from the DOJ or from other sources.  None of the Defendants have yet requested specific voir dire questions, but the Court would entertain any such requests based on pretrial publicity.  The Court notes that pursuant to its most recent Pretrial Order, the parties are to submit requested voir dire by July 1, 2014.  ECF No. 244 at 4.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Smith's "Motion to Dismiss [the Indictment] for Prosecutorial Misconduct Based Upon Prejudicial Public Pretrial Statements," **ECF No. 277**, is **DENIED**.

The District Court Clerk is directed to enter this Order and to provide copies to counsel and *pro se* Defendant Louis Daniel Smith.

**DATED** this 30th day of April 2014.

*s/ Rosanna Malouf Peterson*

ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER DENYING MOTION TO DISMISS INDICTMENT~ 13