FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 1 2 2014

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

1

Louis Daniel Smith, *Pro Se*
C/o: 1314 S. Grand Blvd. Ste 2-128

2

Spokane, Washington 99202

3

(509) 590-2188

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
(Hon. Rosanna Malouf Peterson)

11

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **NO: CR-13-00014-RMP** |
| | ) |
| Plaintiff, | ) **MOTION TO SWITCH SIDES** |
| | ) |
| v. | ) June 9, 2014, 6:30 p.m. |
| | ) Without oral argument. |
| LOUIS DANIEL SMITH - 1, | ) |
| | ) |
| Defendant. | ) |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        COMES NOW, Louis Daniel Smith, hereinafter the undersigned, to file the
above-captioned motion, and to move the Honorable Court to allow the defense the
choice of sitting at the table nearest the jury during trial. Among other reasons stated
herein, this allows the jury to have an unimpeded, unobstructed view of defendant(s)
during trial. Due to the layout of the courtroom, the jury is not able to clearly see
defendant(s) or their reactions to witness testimony. This motion is based upon the
points and authorities below.

MOTION TO SWITCH SIDES - 1

RECEIVED

MAY 1 2 2014

CLERK, U.S. DISTRICT COURT
SPOKANE, WASHINGTON

# INTRODUCTION

It has become the general practice that prosecutors enjoy the advantage of sitting, standing, and presenting their cases from the table next to or directly in front of the jury while the defense is banished to the furthest table in the courtroom. Upon researching the matter it is the undersigned's belief that the right to choose from which table to present one's defense properly belongs to the well-behaved defendant, not the government.

An insightful background on seating assignments in criminal trials was written by Steven Sheppard in the Yale Law Journal. *See "Should the Criminal Defendant Be Assigned a Seat in Court?"* 115 Yale L.J. 2203 (2006). Mr. Sheppard posited the question on the propriety of where in the courtroom a defendant has a right to sit. Mr. Sheppard first examined the evolution on how courts in colonial America once followed the tradition of using the dock, as was done in England:

> "Over the last two centuries American courts have granted the criminal defendant more and more autonomy to choose where he will sit during trial. Our courts have allowed the defendant first to leave the 'prisoner's dock'—the railed pen in which he once stood during trial—and then to join his lawyer on the other side of the 'bar,' even as England and Canada have continued to confine the defendant in the dock." *Id.* 115 Yale L.J. 2203, 2205 (2006)

Sheppard further notes that American Courts began allowing defendants to leave the dock and eventually cross the bar in an equitable position to the prosecutors:

> "Though the dock survived the Atlantic crossing, and lingered in the courthouses of the eastern seaboard well into the twentieth century, by the end of the nineteenth century most American courts had ceased to confine the criminal defendant during trial. Today, the American criminal defendant sits with his lawyer at a counsel table positioned to reflect equal status with the prosecution's table." *Id.* at 2206

MOTION TO SWITCH SIDES - 2

1  Although the dock seemed appropriate at one time, such is not the case today.

2  Use of the dock today would be deemed clearly prejudicial to a defendant.

> "Finally in 1983, the First Circuit called the dock what it was: prejudicial. Relying on *Estelle v. Williams*, [425 U.S. 501, 512 (1976)] the case in which the U.S. Supreme Court held that the Due Process Clause prohibits a state from forcing a defendant to wear prison garb to court, the First Circuit held that the dock was, like prison garb, a 'brand of incarceration' which is inconsistent with the presumption innocence. It is now well settled that the Due Process Clause forbids the state from forcing a well-behaved defendant to appear before the jury in a way that suggests his guilt." Yale L.J., supra, at 2203

9  The undersigned asserts that courtroom evolution is not yet complete and that

10  Constitutional principles such as presumption of innocence, equal protection, due

11  process, and the confrontational clause, together suggest that professionally-behaved

12  defendants should be entitled to a choice of which table to be seated, if not a

13  permanent placement next to the jury. This is reasonable since the prosecution has

14  such broad discretion of when and how to bring its case, a similar right of the defense

15  bearing on how to best defend against it, would help bring these into balance. In

16  other words, the defense should have the right to choose from which table it believes

17  it can present its best defense.

## ARGUMENTS

### A. Confrontation Clause

20  There is a Constitutional basis to place the defendants where they can best

21  "face their accusers, for *"In all criminal prosecutions, the accused shall enjoy . . . an*

22  *impartial jury . . . [and to] be confronted with the witnesses against him . . . "*. *See*

23  U.S. Const. Amend. VI.

24  In any criminal case tried before a jury, credibility is a central issue both in

25  terms of the witnesses and the prosecution. This includes nonverbal reactions to

MOTION TO SWITCH SIDES - 3

friendly and hostile witnesses, which are "relevant" to both the defense and the prosecution. The proper determination is to assume that the jury, under the confrontation clause, should have a clear and unimpeded view of these reactions.

**B. Evidence**

The defendants sitting in the proximity of the jury gives the jury information that they can use in their deliberations.

> "There is good reason to think that a defendant's appearance, posture, and facial expressions are evidence, and ought to be considered by the jury. The Supreme Court has long acknowledged that a jury will weigh and consider the defendant's physical appearance, even if the defendant never leaves his seat at the counsel table." Yale L.J., supra at 2210.

**C. "Halo Effect"**

Research indicates that a cognitive bias or "halo effect" is garnered by the prosecution by its close proximity to the jurors, resulting in a "reverse-halo effect" that may, in turn, prejudice the accused. In fact, it could hardly be argued that the accused does not suffer simply because they *are* "accused" and subjected to a process that has been slowly bent by precedent upon precedent to favor the prosecution. This includes, among other things, monopolistic access to Grand Juries and a plethora of exceptions to exculpatory rules that have effectively allowed the executive branch to ignore various clauses to the Bill of Rights.

The placement of the prosecution next to the jury with the accused at a distance is clearly an advantage to the prosecution and a disadvantage to the defense. *See also* Jeffrey S. Wolfe, "The Effect of Location in Courtroom on Jury Perception of Lawyer Performance", 21 PEPP. L. REV. 731, 769-71 (1994).

//

//

MOTION TO SWITCH SIDES - 4

**D. Discretion Merits Choice in Seating as Equal Protection**

Longstanding precedent notes that prosecutors have near total discretion as to whom, when, and where the government levels its charges.

> "The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous. He can have citizens investigated and, if he is that kind of person, he can have this done to the tune of public statements and veiled or unveiled intimations. Or the prosecutor may choose a more subtle course and simply have a citizen's friends interviewed. The prosecutor can order arrests, present cases to the grand jury in secret session, and on the basis of his one-sided presentation of the facts, can cause the citizen to be indicted and held for trial. He may dismiss the case before trial, in which case the defense never has a chance to be heard. Or he may go on with a public trial. If he obtains a conviction, the prosecutor can still make recommendations as to sentence, as to whether the prisoner should get probation or a suspended sentence, and after he is put away, as to whether he is a fit subject for parole. While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst."

Speech of US Attorney General Robert H. Jackson, April 1, 1940

Where the prosecution wields such broad discretion, under the doctrines of presumed innocence and equal protection, surely a defendant should be able to determine from where in the courtroom he will be able to present his best defense.

**E. Comparing Burdens**

Undoubtedly the government will argue that the "burden" is on the prosecution to prove its case and may therefore suggest it is their right to be next to the jury as both proper in form and custom. However, a review of constitutional precedents suggest otherwise. When reviewing a Constitutional matter such as the Confrontation Clause, the following enduring precedent guides us:

> "In expounding the Constitution of the United States, every word must have its due force and appropriate meaning, for it is evident from the whole instrument that no word was unnecessarily used or needlessly added. The many

MOTION TO SWITCH SIDES - 5

discussions which have taken place upon the construction of the Constitution have proved the correctness of this proposition and shown the high talent, the caution, and the foresight of the illustrious men who framed it. Every word appears to have been weighed with the utmost deliberation, and its force and effect to have been fully understood. **No word in the instrument, therefore, can be rejected as superfluous or unmeaning,**" *Holmes v. Jennison*, 39 U.S. (14 Pet.) 540,570-71 (1840) *See, e.g., Wright v. United States*, 302 U.S. 583, 588 (1938) (emphasis supplied)

When considering the restrictions of legislation in light of Constitutional precedent, we are guided by another enduring precedent:

> "' . . . that, in all cases where the constitution has conferred a political right or privilege, and where the constitution has not particularly designated the manner in which that right is to be exercised, it is clearly within the just and constitutional limits of the legislative power to adopt any reasonable and uniform regulations, in regard to the time and mode of exercising that right, which are designed to secure and facilitate the exercise of such right, in a prompt, orderly, and convenient manner;' nevertheless, 'such a construction would afford no warrant for such an exercise of legislative power as, under the pretence and color of regulating, should subvert or injuriously restrain the right itself.'" *Yick Wo v. Hopkins*, 118 US 356, 371-372 (1886)(emphasis supplied)

Considering the above, an argument can be made that deference in this matter should be given to the defendant rather than the government.

**F. A Jury interest**

The undersigned has an interest in raising the jury's interest in having a fair trial. In a similar manner in which a criminal defendant may raise claims for jurors who are excluded due to their race because their interests are aligned, the undersigned argues jury interest here as well:

> "A criminal defendant has standing to raise the third-party equal protection claims of jurors excluded by the prosecution because of their race . . . First, the discriminatory use of peremptory challenges causes the defendant cognizable injury, and he or she has a concrete interest in challenging the practice, because racial discrimination in jury selection casts doubt on the integrity of the judicial process and places the fairness of the criminal proceeding in doubt.

MOTION TO SWITCH SIDES - 6

Second, the relationship between the defendant and the excluded jurors is such that he or she is fully as effective a proponent of their rights as they themselves would be, since both have a common interest in eliminating racial discrimination from the courtroom, and there can be no doubt that the defendant will be a motivated, effective advocate because proof of a discriminatorily constituted jury may lead to the reversal of the conviction . . . Third, it is unlikely that a juror dismissed because of race will possess sufficient incentive to set in motion the arduous process needed to vindicate his or her own rights." *Powers v. Ohio*, 499 U.S. 400 (1991)

## G. Discretion of the Judge

### 1. Courtroom Arrangements are within the Judge's Discretion

The arrangement of the courtroom, including the seating of each party is properly within the purview of the Judge.

"The seating arrangements of a courtroom are within the trial judge's discretion. When exercising that discretion, a judge should weigh a number of concerns, some of which—safety of jurors, for example, or avoidance of prejudice—may well lead her to seat a criminal defendant far from the jury." Yale L.J., supra, at 2210

### 2. A Request To Switch Sides Should Be Considered

"When a well-behaved defendant asks to sit near the jury, however, a judge should not deny his request on the basis of custom alone. By granting the defendant the autonomy to choose his own seat, a judge honors America's historic break with the English practice of confining the defendant in the dock, respects the defendant's right to appear before the jury in his best posture, and provides the jury with relevant, nonverbal evidence from the defendant's confrontation with hostile witnesses." Yale L.J., supra at 2210

## ALTERNATIVE PROPOSAL

If the undersigned's motion is deemed by the Court to be too overreaching, the undersigned asks the Court to follow the ruling in *United States v. Jeffrey Skilling and Kenneth Lay* (Cr. No. H-04-25) where the defendants there made a similar request as the undersigned.

MOTION TO SWITCH SIDES - 7

1    In *Lay*, the trial judge ruled that the party making their presentation may do so

2    next to the jury when it was their turn to present their case.

3    "'Since there is no law to guide me in this weighty decision,' Judge Lake said,
     'fairness and common sense' led him to allow the prosecutors to sit at the

4    closer table when presenting their case, and to grant the defendants the same
     privilege during their presentation." *Mary Flood, Lawyers To Share Table*

5    *Near Jury, chron.com (Houston)*, Jan. 26, 2006

6

7    WHEREFORE the undersigned respectfully requests the Honorable Court

     grant this motion to allow the defense the choice of sitting at the table nearest the jury

8
     during trial, or in the alternate, sitting at the table nearest the jury during presentation

9
     by the defense.

10
     Dated this ___ Day of May 2014 *A.D.*

11
                                        Respectfully submitted,

12

13                                      By: _____

14

15                                      Louis Daniel Smith, *Pro Se*

16                                      C/o: 1314 S. Grand Blvd. Ste 2-128
                                        Spokane, Washington 99202
                                        (509) 590-2188

17

18

19

20

21

22

23

24

25

MOTION TO SWITCH SIDES - 8

# CERTIFICATE OF SERVICE

IT IS HEREBY certified that on the _____ Day of May, 2014 *A.D.*, the foregoing motion was deposited with the Clerk of the Court for filing with the CM/ECF system, which will send notification of such filing to the following parties whom are all CM/ECF participants.

Christopher E. Parisi
U.S. Department of Justice
Liberty Square Bldg, Rm. 6400
450 Fifth Street NW
Washington, D.C. 20530
(202) 598-2208
christopher.e.parisi@usdoj.gov

Timothy T. Finley
U.S. Department of Justice
DC Consumer Protection Branch
P.O. Box 386
Washington, DC 20044-0386
(202) 307-0050
timothy.t.finley@usdoj.gov

Virginia Rockwood
Attorney at Law
P.O. Box 10258
Spokane, WA 99209
(509) 993-1601
virginiarockwood@gmail.com

Bevan Jerome Maxey
Maxey Law Offices
1835 W Broadway
Spokane, WA 99201
(509) 326-0338
hollye@maxeylaw.com

Nicolas V. Vieth
505 W Riverside, Ste 200
Spokane, WA 99201
(208) 664-9494
nick@viethlaw.com

Terence Michael Ryan
1304 W College Avenue
Spokane, WA 99201-2013
(509) 325-5466
tryan@qwestoffice.net

By: _____

Louis Daniel Smith, *Pro Se*
C/o: 1314 S. Grand Blvd. Ste 2-128
Spokane, Washington 99202
(509) 590-2188

MOTION TO SWITCH SIDES - 9