1

2

3

4

5                UNITED STATES DISTRICT COURT

6                EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA,

                                          NO: 13-CR-14-RMP
8                        Plaintiff,

9          v.

                                          ORDER DENYING MOTIONS TO
10  LOUIS DANIEL SMITH, also known       SEVER TRIAL
    as Daniel Smith, also known as Daniel
11  Votino; KARIS DELONG, also known
    as Karis Copper; TAMMY OLSON;
12  and CHRIS OLSON,

13                       Defendants.

14

15          BEFORE THE COURT are Motions to Sever Trial from Defendant Smith

16  filed by Codefendants Tammy Olson and Karis Delong, respectively.  ECF Nos.

17  317, 318.  Also before the Court is a motion to accept a late-filed declaration in

18  support of the motions to sever, filed by Defendant Louis Daniel Smith, ECF No.

19  361, and a motion to expedite the same, ECF No. 362, which was granted in the

20  Court's Order Memorializing Court's Oral Rulings at ECF No. 367.

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 1

1        BACKGROUND

2        Codefendants Tammy Olson and Karis Delong were indicted, along with

3 Defendant Smith, on one count of conspiracy to commit an offense against the

4 United States or to defraud the United States in violation of 18 U.S.C. § 371; four

5 counts of delivering misbranded drugs into interstate commerce in violation of 21

6 U.S.C. §§ 331(a) and 333(a)(2); and one count of smuggling in violation of 18

7 U.S.C. § 545.  ECF No. 1.  The Indictment alleges that the Defendants engaged in

8 a scheme to import, manufacture, and sell hazardous material that was marketed as

9 a health product.  *Id.*  Specifically, the Indictment alleges that Defendants,

10 operating through a company called "PGL International," misbranded sodium

11 chlorite, a harmful chemical, as Miracle Mineral Solution ("MMS") and marketed

12 it to the public for consumption to cure such ailments as malaria, HIV/AIDS,

13 hepatitis, and various forms of cancer. *Id.* at 4, 7.

14        With regard to count one of the Indictment, Defendants are accused of

15 conspiring "to obtain the chemicals needed to manufacture the drug MMS without

16 revealing to regulators and suppliers the true purpose of the chemicals; to use those

17 chemicals to manufacture the drug MMS in a facility that was hidden from

18 regulators; to offer MMS for sale on websites they had established; and to enrich

19 themselves by obtaining money from the interstate sales of the misbranded drug

20 MMS." *Id.* at 7.  The Indictment contains numerous specific allegations as to

1   Codefendants Karis Delong and Tammy Olson's alleged involvement in the

2   conspiracy, along with Defendant Smith and Codefendant Chris Olson.[1]

3         Codefendants Tammy Olson and Karis Delong filed motions to sever their

4   trial from the trial of Defendant Smith, contending that they require access to

5   exculpatory testimony that Defendant Smith only can provide at their separate trial.

6   ECF Nos. 317, 318.  At the Codefendants' request, the Court allowed for

7   supplemental briefing on the Codefendants' motions to sever.  ECF No. 337.

8   Codefendants Tammy Olson and Karis Delong filed their supplemental

9   memoranda *ex parte*.  ECF Nos. 354, 355.[2]  Codefendants explained that they were

10  filing their memorandum *ex parte* due to their reliance on certain materials to

11  which Defendant Smith has claimed attorney-client privilege and which have not

12  been disclosed to the Government.

13        On July 14, 2014, after the deadline set forth in the Court's Pretrial Order,

14  Defendant Smith filed a declaration in support of Codefendants Tammy Olson's

15  and Karis Delong's motions to sever.  ECF No. 357.  The Government filed its

16  supplemental response within the time frame set forth in the Court's Pretrial Order

17  and argued in part that Defendant Smith's supporting declaration was not timely

18  ───────────────

    [1]  Codefendant Chris Olson has since pleaded guilty to one count of Shipment of

19  Misbranded Drugs in violation of 21 U.S.C. §§ 331(a) and 333(a)(1).

20  [2]  Codefendant Delong filed her supplemental memorandum as a separate motion,
    but the Court reviews it as a supplement to her original motion.

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 3

filed.  ECF No. 359.  The Court determined at oral argument that it would accept

Defendant Smith's late-filed declaration.  ECF No. 367 at 2.  The Court

additionally will consider a reply brief that Defendant Smith filed in support of

Codefendants Tammy Olson's and Karis Delong's motions to sever, ECF No. 363.

DISCUSSION

Codefendants Tammy Olson and Karis Delong both premise their motions to

sever on the basis that Defendant Smith would provide exculpatory testimony as to

those two Codefendants in a separate trial.  *See, e.g.*, *United States v. Mariscal*,

939 F.2d 884, 885 (9th Cir. 1991).

There exists a preference in the federal system that codefendants jointly

charged should be jointly tried.  *E.g.*, *United States v. Hernandez-Orellana*, 539

F.3d 994, 1001 (9th Cir. 2008).  Federal Rule of Criminal Procedure 8(b) provides

for joinder of two or more defendants if the defendants "are alleged to have

participated in the same act or transaction, or in the same series of acts or

transactions, constituting an offense or offenses."  However, a court may sever

defendants' trials under Federal Rule of Criminal Procedure 14(a) where joinder

"appears to prejudice a defendant."

When joinder was originally proper under Rule 8(b), "a district court should

grant a severance under Rule 14 only if there is a serious risk that a joint trial

would compromise a specific trial right of one of the defendants, or prevent the

jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objects can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id.* at 540 (quoting *Bruton v. United States*, 391 U.S. 123, 130 (1968)) (alteration in *Zafiro*).

One basis for ordering separate trials is when a codefendant will provide exculpatory testimony at another defendant's separate trial. *E.g.*, *Mariscal*, 939 F.2d at 885. In considering a request for severance on this ground, the court must weigh such factors as "the good faith of the intent to have a codefendant testify, the probability that the testimony will materialize, the economy of a joint trial, the possible weight and credibility of the predicted testimony, and the degree to which the predicted testimony is exculpatory." *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (citing *Mariscal*, 939 F.2d at 885)). The predicted testimony is not sufficiently exculpatory where it would merely be favorable to the moving defendant; rather, the predicted testimony must instead be "substantially exculpatory." *Mariscal*, 939 F.2d at 886 (quoting *United States v. Ford*, 870 F.2d 729, 732 (D.C. Cir. 1989)). "A showing that the testimony would merely contradict portions of the government's proof is insufficient." *Id.* The test for

severability on this ground is "stringent."  *United States v. Reese*, 2 F.3d 870, 892 (9th Cir. 1993).

Codefendants Tammy Olson and Karis Delong contend that their trials must be severed from that of Defendant Smith because Defendant Smith can provide exculpatory evidence that could not otherwise be presented without his testimony, and that Defendant Smith likely would invoke his Fifth Amendment right to remain silent if called to testify at a joint trial.  Specifically, Codefendants Tammy Olson and Karis Delong point to Count One of the Indictment, which charges all Defendants with engaging in a conspiracy "with the intent to defraud or mislead the United States and its agencies," in violation of 18 U.S.C. § 371.  As the Codefendants point out, § 371 criminalizes only willful intent.  *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989).  Codefendants Tammy Olson and Karis Delong contend that Defendant Smith can testify that they did not act willfully, because they were not privy to the communications that Defendant Smith had with attorneys and consultants, or with the FDA, regarding the continued sale of MMS.

In support of their argument, Codefendants point to emails between Defendant Smith and his previous attorney Nancy Lord.  Defendant Smith has asserted that he is entitled to attorney-client privilege as to these emails.  The emails, which were obtained by a search warrant and screened by the Government's screening team, were ordered by the Court to be provided to the

Codefendants in discovery pursuant to the Government's *Brady* obligations. The Court has considered the substance of these emails in ruling on the Codefendants' motions to sever.

In addition, Defendant Smith filed a declaration in which he stated that he will provide testimony at the separate trial of his Codefendants "whether such trial may precede or follow" his own. ECF No. 357 at 2. Defendant Smith stated that he would testify that neither Tammy Olson nor Karis Delong was privy to the general business dealings of his company. *Id.* at 4, 13. Defendant Smith also states that he would testify that Tammy Olson worked remotely and was responsible for dealing with customers and third-party companies fulfilling the packaging and shipping of MMS. *Id.* at 3-4. According to Defendant Smith, Ms. Olson's "set duties and responsibilities were extremely limited and did *not* include regular ordering, purchasing, receiving, manufacturing, bottling, labeling, production inspection, or shipping of materials, nor was [she] involved in any of the technical, legal, or financial affairs of [Smith's company]." *Id.* at 4.

As to Karis Delong, Defendant Smith would testify that she has spent the last decade tending to and home-schooling the three children whom she has raised with Defendant Smith. *Id.* at 11. According to Defendant Smith, Ms. Delong "had the least involvement in PGL of any of the co-defendants," and that where her name does appear in connection with financial transactions, "the transaction was

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 7

1    [in almost every instance] made exclusively by [Defendant Smith] without

2    [Codefendant Delong's] knowledge or involvement." *Id.*  Defendant Smith would

3    additionally testify that Codefendant Delong did not manage any business finances

4    and "thus had no reason to know what purchases were being made or for what

5    purpose"; that Codefendant Delong "never played any real managerial or decision

6    making role in the [business]"; that Codefendant Delong told Defendant Smith on

7    "numerous occasions" that she was "not interested in being involved in the

8    business"; and that even though Defendant Smith would forward business-related

9    emails to Codefendant Delong, she had told him "on more than one occasion" that

10   "she rarely read what I forwarded" and would admit to him on some occasions that

11   she did not even open an email he had forwarded to her. *Id.* at 11-13.

12        Defendant Smith also would apparently seek to offer character testimony

13   regarding his Codefendants, including that "they would never do anything to harm

14   another individual and never, knowingly, willfully, or intentionally break the law,

15   let alone defraud the government." *Id.* at 10.  Defendant Smith offers that in his

16   view that the evidence he has seen in discovery does not support the charges

17   against his codefendants.  The Court finds that such testimony is not likely to be

18   admissible at trial.

19        For its part, the Government concedes that the good faith of the intent to

20   have a codefendant testify and the probability that the testimony will materialize

are two factors weighing in favor of severance.  *See Mariscal*, 939 F.2d at 885.

However, the Government contends that the remaining factors each weigh against

severance.  The Government argues that severance should not be granted because

Defendant Smith plans to testify on largely inadmissible matters; the admissible

testimony that Defendant Smith will offer is not credible; and Defendant Smith's

planned testimony is not substantially exculpatory, especially in light of the

evidence that the Government will introduce at trial.

According to the Government, evidence will be introduced at trial

demonstrating that Codefendants Olson and Delong were aware of FDA warnings

regarding the safety of MMS; that the FDA had inspected and seized MMS from

contractors; that the FDA had provided Defendant Smith with warnings regarding

the legality of his actions; that Codefendant Olson was aware of the execution of

multiple search warrants including one executed at her then-husband's company

during the course of the criminal investigation; and that Codefendant Olson

continued to market and sell MMS through her own website even after the search

warrants were executed.

The Government further contends that the economy of a joint trial weighs

heavily against severance because at least ten government witnesses reside out of

district and because witnesses' memories may fade and evidence may spoil as

numerous trials are conducted.  Finally, the Government contends that

Codefendants could obtain their evidence through other sources, including by subpoenaing attorney Nancy Lord or other persons with whom Defendant Smith consulted, or by testifying on their own behalf.

The Government additionally contends that Defendant Smith has placed restrictions on his offer of testimony. *See United States v. Gay*, 567 F.2d 916, 919-20 (9th Cir. 1978) (holding that the trial court did not abuse its discretion "in refusing to accede to [a codefendant's] conditional offer to present exculpatory testimony"). The Court notes that although Defendant Smith stated that he would testify regardless of whether his trial or the Codefendants' trial came first that he could assert a Fifth Amendment privilege if his trial precedes the trial of his Codefendants. ECF No. 357 at 2.

In considering all of the relevant factors, the Court concludes that severance on the grounds identified by Coefendants Tammy Olson and Karis Delong is not warranted. To succeed on the grounds identified, the Codefendants must show that Defendant Smith's planned testimony would be "substantially exculpatory." *Mariscal*, 939 F.2d at 886. "A mere assertion of ultimate fact is not substantially exculpatory." *United States v. Taren-Palma*, 997 F.2d 525, 533 (9th Cir. 1993) (citing *Ford*, 870 F.2d at 730-32), *overruled on other grounds by United States v. Shabani*, 513 U.S. 10, 11 (1994).

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 10

1    Although Defendant Smith proffers testimony that Codefendants Tammy

2    Olson and Karis Delong played only limited roles in the MMS distribution scheme

3    and were thus unaware of the possible illegality of their actions, hissupporting

4    affidavit is contradictory on this point.  For example, Defendant Smith proffers that

5    "Ms. Olson's limited duties afforded her no reason or occasion to receive, buy, or

6    conceal Sodium Chlorite, let alone be aware of any such importation," ECF No.

7    357 at 5, yet Defendant Smith concedes that Tammy Olson dealt with customers

8    purchasing MMS and that her duties "occasionally included speaking with

9    representatives of [third party fulfillment companies who packaged and shipped

10   MMS] in order to locate lost or missing orders."  *Id.* at 3.   Moreover, Defendant

11   Smith concedes that Tammy Olson's then-husband, Codefendant Chris Olson,

12   bottled MMS for the same company where Tammy Olson was employed as a

13   "member care" representative dealing with purchasers of MMS.  *Id.* at 8.

14       As to Codefendant Karis Delong, Defendant Smith would testify that she

15   "had the least involvement in PGL of any of the co-defendants."  *Id.* at 11.  Yet

16   Defendant Smith also admits that a PayPal account, a web domain, and a bank

17   account, all tied to the selling of MMS, were operated in Karis Delong's name.  *Id.*

18   Defendant Smith also admits that Karis Delong appeared as a managing member

19   on LLC documentation for a company selling MMS.  *Id.* at 12.  According to

20   Defendant Smith, Ms. Delong additionally "reluctantly covered for [him]" when he

left town for a business trip and "picked up product for me from the manufacturer once or twice and may have attended [] meeting[s] with [him]." *Id.* at 12. Defendant Smith additionally concedes that he forwarded numerous "business-related email[s]" to Karis Delong, but contends that she "rarely read what I forwarded." *Id.* at 13.

Apart from Defendant Smith's affidavit, the Government also states that it intends to introduce evidence contradicting Defendant Smith's characterization of Codefendants Tammy Olson's and Karis Delong's roles in the company.  For example, the Indictment alleges that Karis Delong "was a managing member of PGL who frequently handled financial transactions for PGL," and used multiple email addresses "to communicate with co-conspirators, suppliers, and other individuals associated with MMS and PGL." *Id.* at 4.  The Indictment further alleges that Tammy Olson "established the website purestreamhealth.com after federal agents executed search warrants at various locations in Spokane, Washington, related to the production and shipping of MMS," and that Ms. Olson used the purestreamhealth.com website to "continue[] marketing and selling MMS to consumers." *Id.* at 15.[3]

---

[3]  Although an Indictment is not evidence, the Government has indicated that it intends to introduce evidence backing up these charges at trial, including troves of electronic communications obtained through a warrant on the Defendants' associated Google accounts.

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 12

Therefore, Defendant Smith's mere assertions that Codefendants Tammy Olson and Karis Delong did not have knowledge of the MMS scheme are insufficient to establish that his testimony would be substantially exculpatory, especially in light of his accompanying statements that contradict that proposition. The planned testimony offered by Defendant Smith could be viewed as inculpatory as it is exculpatory, and the exculpatory components of his testimony would merely contradict portions of the Government's evidence, which is not sufficient to support severance. *See United States v. Pitner*, 307 F.3d 1178, 1181-82 (testimony is not "substantially exculpatory" where it "refutes only portions of the government's case, and leaves unaffected other evidence sufficient to convict") (citing *Reese*, 2 F.3d at 892).

Nor does Codefendants Tammy Olson's and Karis Delong's reliance on privileged communications between Mr. Smith and his counsel, Nancy Lord, establish that severance is appropriate or that they would have access to substantially exculpatory evidence at their separate trials. Codefendants Tammy Olson and Karis Delong assert that Defendant Smith had communications with Nancy Lord regarding the legality of PGL's actions and that Defendant Smith either did not communicate his conversations with Ms. Lord to his Codefendants or that he misrepresented the substance of these communications to his Codefendants. However, in Defendant Smith's declaration submitted in support of the motions to

1    sever he states that he would testify that he "relayed [his] reliance upon" Ms. Lord

2    and other supposed legal experts "to co-defendants Tammy Olson and Karis

3    Delong." ECF No. 357 at 21. Defendant Smith has not said that he would testify

4    that he withheld advice given to him by Ms. Lord regarding the legality of PGL's

5    actions. Similarly, the mere inclusion of any emails by Ms. Lord at separate trials

6    would not be relevant as to whether Codefendants Olson and Delong were aware,

7    or unaware, of their content.

8         The economy of joint trials also weighs heavily against severance. It is

9    apparent that separate trials would be entirely duplicative as the same evidence

10    would be introduced and the same witnesses would testify at separate trials of

11    Defendant Smith and his Codefendants. The concern for judicial economy is "an

12    important factor militating against severance" in this case. *Reese*, 2 F.3d at 892.

13        The Court additionally notes that Defendant Smith's planned testimony

14    would not appear to bear substantial weight or credibility. As discussed above,

15    Defendant Smith will seemingly contradict himself as he seeks to portray the

16    Codefendants as having a very limited role in PGL while admitting that they in fact

17    had substantial involvement in at least some areas and instances, including dealing

18    with shippers, bottlers, and suppliers. In addition, Defendant Smith has

19    longstanding personal relationships with both Codefendants Tammy Olson and

20    Karis Delong that may minimize the weight of his testimony. However, the Court

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 14

1  does not place much reliance on this factor because it is ultimately the jury's

2  function to determine the weight and credibility of any testimony given at trial.

3      The Court concludes that Codefendants Tammy Olson and Karis Delong's

4  motions to sever should be denied because they have not met the necessary

5  condition of showing that Defendant Smith will offer substantially exculpatory

6  testimony if the trials are severed.  In addition, judicial economy would not be

7  served by separate trials.

8      Accordingly, **IT IS HEREBY ORDERED**:

9      1.  Defendant Tammy Olson's Motion to Sever Defendant, **ECF No. 317**, is

10         **DENIED**.

11     2.  Defendant Karis Delong's Motion to Sever Defendant, **ECF No. 318**, is

12         **DENIED**.

13     3.  Defendant Karis Delong's Ex Parte Motion, **ECF No. 355**, is **DENIED**.

14  **IT IS SO ORDERED**.

15     The District Court Clerk is directed to enter this Order and provide copies to

16  counsel and to pro se Defendant Smith.

17     **DATED** this 3rd day of September 2014.

18

19              *s/ Rosanna Malouf Peterson*
              ROSANNA MALOUF PETERSON
              Chief United States District Court Judge

20

ORDER DENYING MOTIONS TO SEVER TRIAL ~ 15