1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                       EASTERN DISTRICT OF WASHINGTON

7    UNITED STATES OF AMERICA,
                                              NO:  13-CR-14-RMP-1
8                         Plaintiff,

9         v.                                  ORDER DENYING DEFENDANTS'
                                              MOTIONS TO DISMISS
10   LOUIS DANIEL SMITH, also known
     as Daniel Smith, also known as Daniel
11   Votino; KARIS DELONG, also known
     as Karis Copper; TAMMY OLSON;
12   and CHRIS OLSON,

13                        Defendants.

14        Before the Court are Defendants' three Motions to Dismiss, **ECF Nos. 389,**

15   **390 and 393**.[1]  Defendant Louis Daniel Smith, who is appearing in this matter *pro*

16

17   ───────────────────
     [1] The titles of those motions are as follows:  ECF No. 389 – Motion for Dismissal
18   or in the Alternate an Order Compelling Production and Granting a Continuance;
     ECF No. 390 – Verified Report of Felony Violations Pursuant to 18 U.S.C. § 4;
19   Professional Misconduct (28 U.S.C. § 530B), Due Process Violations; and Motion
     for Relief; ECF No. 393 – Motion to Dismiss Case or Disqualify Counsel for
20   Plaintiff.  All three motions request dismissal as well as alternative forms of relief.

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 1

1   *se*, filed all three motions. [2]  Neither co-defendant Karis DeLong nor co-defendant

2   Tamara Olson have filed an opt-out notice to the motions and thus are considered

3   as having joined the motions pursuant to the Pretrial Order in this case.  ECF No.

4   122 at 4.

5       A pretrial conference was held in this matter on October 7, 2014.

6   Christopher E. Parisi appeared at the conference on behalf of the Government.

7   Defendant Louis Daniel Smith appeared *pro se*, with standby counsel Terence M.

8   Ryan also present.  Roger J. Peven appeared on behalf of Defendant Karis Delong,

9   and Nicholas V. Vieth appeared on behalf of Defendant Tammy Olson.  The Court

10  has considered: the motions; the opposition filed by the Government, ECF No.

11  399; all of Defendants' replies, ECF Nos. 405, 408, and 409; the Affidavit of Brent

12  Westenfelt of Orange Legal Technologies, ECF No. 418; the Declaration of Tim

13  McCann, the defense discovery coordinator, ECF No. 417; and the parties'

14  arguments.  The Court is fully informed.

## BACKGROUND

16      The facts and procedural history of this matter are set forth in the Court's

17  order at ECF No. 394, denying Defendants' motion to continue.  Therefore, the

---

[2]  Defendant Smith's motions are liberally construed because he is appearing *pro se*.  *See, e.g.*, *United States v. Johnson*, 988 F.2d 941, 943 (9th Cir. 1993).

Court does not repeat the facts here except where necessary for the following analysis.

## DISCUSSION

In two of Defendants' motions, Mr. Smith claims violations of his Fifth Amendment rights.  ECF Nos. 389 and 390.  In the third motion, Mr. Smith claims a violation of his Sixth Amendment rights.  ECF No. 393.

**A. Fifth Amendment Claims**

The Fifth Amendment Due Process Clause protects defendants from prosecutorial misconduct in the pre-indictment stage.  *United States v. Simmons*, 536 F.2d 827, 830 n.9 (9th Cir. 1976) (citing *United States v. Marion*, 404 U.S. 307, 320, 324 (1971)).  Under Federal Rule of Criminal Procedure 48, a court may dismiss an indictment pre-trial, sua sponte, "if unnecessary delay occurs in: . . . (3) bringing a defendant to trial."  *Id.*

Additionally, the Ninth Circuit has held that a court may dismiss an indictment with prejudice either because of "outrageous government conduct" that "amounts to a due process violation," or "under [the court's] supervisory powers."  *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).  However, "although courts have the power to dismiss an indictment . . ., the power is exercised sparingly."  *United States v. Busher*, 817 F.2d 1409, 1411 (9th Cir. 1987) (citing *United States v. De Rosa,* 783 F.2d 1401, 1404 (9th Cir. 1986); *United*

*States v. Al Mudarris,* 695 F.2d 1182, 1185 (9th Cir. 1983)).  "[D]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority," and therefore "this sanction may be permitted only in cases of flagrant prosecutorial misconduct."  *Chapman*, 524 F.3d at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)) (internal quotation marks omitted) *abrogated on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008).  Moreover, "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice."  *Chapman*, 524 F.3d at 1087 (quoting *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988)).

1.  **ECF No. 389:  Motion to Dismiss or Alternatively Compel Production and Continue**

Mr. Smith alleged in his motion that the Government had failed to turn over all electronic discovery to Defendants in violation of his Fifth Amendment right to due process.  ECF No. 389 at 6.  He contended that dismissal of the indictment was an appropriate remedy.  ECF No. 389 at 6.

Prior to the hearing on this matter, Mr. Smith submitted two affidavits in support of his motion:  one from Brent Westenfelt of Orange Legal Technologies, and one from Tim McCann, the discovery coordinator in this case.  ECF Nos. 417 and 418.  Mr. Westenfelt stated that Orange Legal Technologies received only one of five files listed on the Google, Inc. warrant return.  ECF No. 418 at 3.  The

1   missing files include:  ".fseventsd;" ".Spotlight-V100;" ".Trashes;" and

2   "._.Trashes."  ECF No. 418 at 3.  Mr. Westenfelt also indicated that Orange

3   Technologies did not receive any e-mails generated from two e-mails addresses:

4   customercare@projectgreenlife.com and joe@projectgreenlife.com.  ECF No. 418

5   at 3-4.

6          In his affidavit, Mr. McCann stated that the discovery hard drive that the

7   Government provided to him did not include four of the five files listed on the

8   Google, Inc. warrant return.  ECF No. 417 at 2.  In particular, Mr. McCann noted

9   the missing ".Trashes" folder.  ECF No. 417 at 3.

10         Since the hearing on this matter, AUSA Parisi has confirmed that four of the

11  five files listed on the Google, Inc. warrant return, namely, ".fseventsd;"

12  ".Spotlight-V100;" ".Trashes;" and "._.Trashes.", were in fact inadvertently left off

13  the discovery hard drive disclosed to Defendants.  ECF No. 430 at 3-4.  AUSA

14  Parisi assures this Court that the mistake was simply a computer error that was

15  unintentional.  ECF No. 430 at 3-4.

16         Moreover, the Government recently filed an Affidavit by Alexandra

17  McCombs, the Lead Project Manager for Labat-Anderson Incorporated, the

18  Government's electronic discovery contractor.  ECF No. 443.  In that affidavit, Ms.

19  McCombs declares under penalty of perjury that the four missing folders "do not

20  contain any e-mails . . . . they contain only system files and other data which is

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 5

1  unrelated to the e-mail files." ECF No. 443 at 4. Ms. McCombs further states that

2  the metadata associated with the ".mbox" files contained within these four folders

3  "does not contain information which would show whether an email was opened,

4  how long it might have been open, or whether a particular person reviewed an

5  email." ECF No. 443 at 4.

6       Nevertheless, Mr. Smith contends that the Government's initial failure to

7  provide these missing files warrant dismissal of this case. ECF No. 389. Mr.

8  Smith cites *United States v. Chapman* in support of his request that this Court

9  dismiss the indictment with prejudice. ECF No. 389 at 4-6. However, *Chapman*

10  requires the presence of "flagrant prosecutorial misconduct." *Chapman*, 524 F.3d

11  at 1085 (citing *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991)

12  *abrogated on other grounds by W.R. Grace*, 526 F.3d at 511 n.9). In *Chapman*,

13  the court found flagrant prosecutorial misconduct where the government failed to

14  produce material required by *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v.*

15  *United States*, 405 U.S. 150 (1972). *Chapman*, 524 F.3d at 1085. The government

16  also failed to keep a log of what the government already had disclosed, and

17  "repeatedly represented to the court that he had fully complied with *Brady* and

18  *Giglio*, when he knew full well that he could not verify these claims." *Id.*

19       There is no evidence that AUSA Parisi has intentionally failed to produce

20  material required by *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United*

*States*, 405 U.S. 150 (1972), and thus engaged in "flagrant prosecutorial misconduct." *Chapman*, 524 F.3d at 1085. The Government has limited discovery obligations. Under Federal Rule of Criminal Procedure 16, the Government must disclose any oral or written statements made by Defendant, Defendant's prior record, any items that are "material to preparing the defense," items that the government intends to use in its case-in-chief, and items that were obtained from or belong to the defendant." Fed. R. Crim. Pro. 16. Under *Brady*, the Government's responsibility to provide pre-trial discovery extends only to potentially exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Mr. Smith has failed to show that the missing four folders will be used in the Government's case-in-chief or have any exculpatory value whatsoever, and Ms. McComb's affidavit supports the opposite conclusion. ECF No. 443.

Additionally, there is no evidence that AUSA Parisi failed to disclose the four folders in bad faith. The Ninth Circuit in *Chapman* acknowledged the difficulty that a defendant faces in attempting to prove that the government intentionally failed to comply with its discovery obligations. *Chapman*, 524 F.3d at 1085. Nevertheless, the district court in *Chapman* found that the government had failed to comply with its discovery obligations, whether intentionally or not, when the government presented evidence at trial that the defendants asserted had never been disclosed to them pretrial. *Id.* at 1078-80. When ordered by the Court

to provide documentation proving that the evidence had been disclosed pretrial, the government was unable to do so. *Id.* at 1079, 85.

In contrast, the trial in this case has not yet occurred. This Court can only take the parties at their word. AUSA Parisi assures the Court that the mistake in discovery production has been remedied and that the remaining four folders have been disclosed to Defendants. ECF No. 430 at 4. The four folders' lack of exculpatory value lends credence to the Court's opinion that the Government has not acted in bad faith by erring in their initial disclosure obligations.

Finally, even considering the Government's error in failing to disclose initially the four files returned by Google, Inc., the Court finds that Mr. Smith has failed to make any showing that he or the other defendants have suffered substantial prejudice as a result of the delayed disclosure of the missing folders, files, and e-mails. See *Chapman*, 524 F.3d at 1087 ("A court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice.") (quoting *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988)).

The electronic discovery in this case is complicated, and it would be unfair for this Court to expect Mr. Smith to know the contents of all the allegedly missing files. Nevertheless, Mr. Smith is claiming an absence of files that initially belonged to him: his e-mails taken from his e-mail accounts or computers. Mr.

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 8

1  Smith should be able to describe to the Court what exculpatory material is missing,

2  and how exactly that material will prove exculpatory.

3      When pressed by the Court at the hearing, Mr. Smith stated that some of the

4  missing e-mails may show that customers contacting Project Green Life (PGL)

5  were looking to purchase Miracle Mineral Solution (MMS) to sanitize their water

6  supply, rather than for use as a drug.  Mr. Smith argued that this would be

7  exculpatory.  The Court does not find this argument persuasive.

8      The Food, Drug and Cosmetic Act (codified at 21 U.S.C. §§ 301-399d),

9  under which Defendants were charged, defines "drug" as, among other things,

10 articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention

11 of disease in man, 21 U.S.C. § 321(g)(1)(B), articles (other than food) intended to

12 affect the structure or any function of the body of man, 21 U.S.C. § 321(g)(1)(C),

13 and articles intended for use as a component of any article specified in clause (A),

14 (B), or (C), 21 U.S.C. § 321(g)(1)(D).  This definition arguably encompasses the

15 sale of MMS for water purification and sanitization as well as the sale of MMS for

16 direct human consumption.

17     Without more, there is no evidence that the Government has disregarded its

18 discovery obligations in bad faith by failing to produce exculpatory material, nor is

19 there any evidence that Defendants have suffered, or will suffer, "substantial

20 prejudice."  If the Government introduces evidence at trial that has not been

previously disclosed, Mr. Smith may renew his motion.  Until that time, Mr.

Smith's motion to dismiss, ECF No. 389, is denied.

Alternatively, Mr. Smith asks this Court to require the Government to

produce "a forensic copy of the 32-gigabyte Kingston thumb drive originally

received from Google, Inc. and grant a 180 day continuance from the day the data

is received." ECF No. 389 at 6.  As discussed previously, the Government assures

the Court that the remaining four folders have been disclosed to Defendants.  ECF

No. 430 at 4.  The Court, therefore, treats Mr. Smith's request for repeat discovery

as moot.

Finally, Defendant recently requested a continuance on the basis that the

Government had failed to abide by its discovery obligations.  ECF No. 365.  The

Court properly denied that motion.  ECF No. 394.  Mr. Smith then sought

reconsideration by this Court, ECF No. 397, and the Court similarly denied that

motion, ECF No. 411.  The Court reserves on Mr. Smith's latest motion for a

continuance as an alternative relief until the pretrial conference on November 4,

2014.  Therefore, Defendants' motion, ECF No. 389, is denied in part and reserved

in part.

**2. ECF No. 390:  Motion to Dismiss or Alternatively to Disqualify and to Suppress**

Mr. Smith urges this Court to dismiss the indictment in this case because the Government once represented to this Court that Google, Inc. returned "between 1.8 and 1.9 million files" in response to the search warrant, but the most recent version of discovery indicates there are only 509,467 files.  ECF No. 390 at 1, 4.  Mr. Smith further argues that the Government lied to this Court about the number of files in order to rebut Mr. Smith's 2012 motion to return property.  ECF No. 390 at 3, 7.  Mr. Smith accuses AUSA Parisi of perjury, pursuant to 18 U.S.C. § 1621; fraud, pursuant to 18 U.S.C. § 371; violation of federal attorney ethical standards, pursuant to 28 U.S.C. § 530B; and violation of Washington State Rule of Professional Conduct 3.3.  ECF No. 390 at 8-9.  Thus, Mr. Smith contends the indictment in this case was obtained by fraud on the court in violation of his Fifth Amendment right to due process, and that dismissal of the indictment is an appropriate remedy.

Mr. Smith provides no evidence that the Government's representations to this Court regarding the quantity of electronic data were intentionally misleading, nor is there any evidence that the Government's conduct amounts to "flagrant prosecutorial misconduct."  *Chapman*, 524 F.3d at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir 1991)) (internal quotation marks omitted)

*abrogated on other grounds by W.R. Grace*, 526 F.3d at 511 n.9.  AUSA Parisi

explained the discrepancy in the number of data files.  *See* ECF No. 296 at 18-19.

Additionally, the Government informed the Court at the hearing that it has no

knowledge of how Orange Technologies is counting files, or how the government

contractor counted files.  Agent Borden's testimony before this Court that there

were between 1.8 and 1.9 million files was based on information given to her by

the government contractor.  The Government explained that Agent Borden relied

on that information without knowing how that number was calculated.

Moreover, the Government correctly states that without access to the defense

discovery database, it is impossible to know why the defense team's review of the

evidence shows substantially less than 1.8 or 1.9 million files.  ECF No. 399 at 5.

After the hearing in this matter, the Government submitted a declaration by Ms.

Alexandra McCombs, ECF No. 443.  In Ms. McCombs' declaration she explains

the number of files and duplicates that were originally given to her company in

2012 to process.  ECF No. 443 at 3-4.  Ms. McCombs states that identical files

were removed during "the de-duplication process."  ECF No. 443 at 4.

The Court cannot determine precisely how many files should have been

disclosed, including identical files.  Mr. Smith cannot adequately demonstrate to

this Court, at this stage in the proceedings, and presumably without a side-by-side

comparison of the two discovery databases, that any non-identical files were not

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 12

disclosed.  It may be that the method by which the Government's contractors have organized and processed the data is different from the defense team's method which could account for the size difference.

What is clear is that Mr. Smith provides no evidence that Defendants have suffered "substantial prejudice" as a result of this alleged intentional misrepresentation by the Government.  *See Chapman*, 524 F.3d at 1087 (quoting *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988)).  Mr. Smith states that the alleged misrepresentation "has produced a substantial hardship upon the Defendants," ECF No. 390 at 11, but fails to expound upon that hardship or provide examples of its effects.  Without a showing of substantial prejudice, this Court cannot dismiss an indictment with prejudice.  Therefore, Defendants' motion to dismiss, ECF No. 390, is denied.

Alternatively, Mr. Smith asks this Court to disqualify AUSA Parisi and potential government witness, Agent Borden, from the trial.  ECF No. 390 at 14.  Mr. Smith provides no precedent for such an action by this Court and no grounds for his proposed remedy other than his allegation that AUSA Parisi lied to the Court about the number of Google, Inc. files.  The Court finds that such a request is not supported by either legal authority or by the facts and denies Defendant's motion to disqualify.

Mr. Smith further requests, in the alternative, that this Court suppress all of the data turned over by Google, Inc. pursuant to the Government's search warrant. ECF No. 390 at 13. The Ninth Circuit has indicated that suppression of evidence may be an appropriate remedy for prosecutorial misconduct amounting to a Fifth Amendment due process violation. *See United States v. Rogers*, 751 F.2d 1074, 1078 (9th Cir. 1985). As previously explained, the Court has not found a constitutional violation and denies Mr. Smith's motion to suppress on that basis.

Finally, Mr. Smith wishes this Court to treat his motion as a "formal complaint" of AUSA Parisi's professional misconduct, and to empanel a Special Grand Jury to investigate Mr. Smith's allegations that AUSA Parisi committed fraud, perjury, and conspiracy. ECF No. 390 at 15. The Court may take disciplinary action against an attorney practicing before this Court if the attorney "engages in conduct violating applicable Rules of Professional Conduct of the Washington State Bar, or . . . fails to comply with rules or orders of this Court." LR 83.3(a). In order to initiate disciplinary proceedings against an attorney, the Court must find that "reasonable grounds" exist. LR 83.3(b). The Court finds there is no evidence that AUSA Parisi has violated the Rules of Professional Conduct or the rules of this Court. Therefore, Mr. Smith's motion, ECF No. 390, is denied.

**B. Sixth Amendment Claim**

    **1.   ECF No. 393:  Motion to Dismiss or Alternatively to Disqualify and to Suppress**

    Mr. Smith urges this Court to dismiss the indictment in this case because AUSA Parisi had physical custody of the defense discovery hard drive after it was loaded with the Google, Inc. data and while it contained e-mails subject to attorney-client privilege, ECF No. 393 at 1, 7.  Mr. Smith contends that in doing so, AUSA Parisi violated Mr. Smith's Sixth Amendment right to counsel.  ECF No. 393 at 3.

    Mr. Smith points specifically to an e-mail AUSA Parisi sent to the defense discovery coordinator, Tim McCann, in which he states he received the defense discovery hard drive and is checking to ensure that all of the discovery is on the drive.  *See* ECF No. 393 Ex. A.  Mr. Smith also points to a letter AUSA Parisi enclosed with the defense discovery hard drive when he mailed it to Mr. McCann, in which he lists all of the computers, hard drives, and thumb drives from which discovery was gleaned and from which the data was copied onto the hard drive.  ECF No. 393 Ex. B.  This list includes the identifying numbers of the computers, hard drives, and thumb drives, as well as a brief description of each device pertaining to the electronic data.  ECF No. 393 Ex. B.  The description for the files

1   returned by Google, Inc. is identified as "[v]arious mbox files obtained from

2   Google."  ECF No. 393 Ex. B.

3           In response, the Government argues that the electronic discovery on the

4   defense discovery hard drive of which AUSA Parisi had physical custody was

5   unprocessed, raw data.  ECF No. 399 at 8-9.  The Government notes that the

6   defense litigation support expert, Orange Technologies, has stated that the raw data

7   must be processed in order to be legible.  ECF No. 399 at 8-9 (citing ECF No. 390

8   Att. 1).  The Government maintains that AUSA Parisi did not view any of the files,

9   either in their unprocessed form, or in a processed form, and that the Government

10  has "gone to great lengths to insulate the prosecution team from the contents of any

11  potentially privileged email."  ECF No. 399 at 9.

12          Mr. Smith argues in reply that the Government's assertions about the

13  readability of the data are inaccurate and that the mbox files were readable with

14  any plain text editor such as Microsoft Word.  ECF No. 408 at 3.  The affidavit

15  signed by Brent Westenfelt of Orange Technologies also states that the emails on

16  the discovery hard drive were MBOX files which were in plain text format,

17  capable of being "opened in various word processing applications" and read,

18  without "substantial processing."  ECF No. 418 at 4.

19          The Court concludes that the fact that the files could have been opened with

20  a word processing application does not mean that Mr. Parisi did open the files.  Mr.

1    Parisi could identify the files from the directory without opening the files or having

2    any access to the contents of the files.

3            In addition, the Court concludes that the allegedly privileged e-mails in this

4    case are not protected by Mr. Smith's Sixth Amendment right to counsel.  The

5    Sixth Amendment right to counsel attaches only upon the initiation of formal

6    criminal charges, such as by indictment.  *Maine v. Moulton*, 474 U.S. 159, 170

7    (2985); *United States v. Hayes,* 231 F.3d 663, 674 (9th Cir.2000) ("[*Kirby v.*

8    *Illinois*, 406 U.S. 682 (1972)] forecloses application of the Sixth Amendment to

9    events before the initiation of adversary criminal proceedings." (quoting *United*

10   *States v. Ash*, 413 U.S. 300, 303 n.3 (1973)) (internal quotation marks omitted);

11   *United States v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1047 (D.Nev. 2006)

12   (noting that "[t]he Ninth Circuit adheres to th[is] bright line rule").  Being a target

13   of a criminal investigation is not sufficient.  *Hayes*, 231 F.3d at 674.  Additionally,

14   the Sixth Amendment right to counsel is offense-specific.  *McNeil v. Wisconsin*,

15   501 U.S. 171, 175 (1991)  It does not apply once for all future prosecutions, but

16   rather applies only to the offense for which the defendant has been indicted, and

17   any other offenses that constitute the "same offense" under the *Blockburger* test.

18   *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

19           Because the Sixth Amendment right to counsel does not attach until the

20   initiation of formal criminal charges, there can be no Sixth Amendment violation

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 17

1   for intrusions into the attorney-client relationship prior to the indictment.  *SDI*

2   *Future Health, Inc.*, 464 F.Supp.2d at 1048 (holding no Sixth Amendment

3   violation where the seizure of defendants' allegedly privileged information

4   predated the indictment); *United States v. Kennedy,* 225 F.3d 1187, 1193–93 (10th

5   Cir. 2000) ("Government intrusions into pre-indictment attorney-client

6   relationships do not implicate the Sixth Amendment."); *United States v. Lin Lyn*

7   *Trading, Ltd.,* 149 F.3d 1112, 1117 (10th Cir. 1998) (finding that defendant's Sixth

8   Amendment rights were not implicated where prior to indictment, government

9   agents seized a notebook containing confidential attorney-client communications);

10  *United States v. Kingston,* 971 F.2d 481, 491 (10th Cir.1992) (holding that

11  appellant could not show prejudice under the Sixth Amendment for violation of

12  attorney-client privilege pre-indictment because "the Sixth Amendment right to

13  counsel does not attach prior to indictment.").

14          When the search warrant was issued and the electronic data was seized, no

15  formal adversary proceedings had been initiated against Defendants.  The Google,

16  Inc. search warrant that produced the allegedly privileged e-mails in this case was

17  issued on June 30, 2011.  Transcript of Motion Hearing at 23, *In re: Search*

18  *Warrants*, No. 2:11-cv-00340-RMP (E.D. Wash. Feb. 2, 2012), ECF No. 31.  Thus,

19  all of the e-mails that the Government seized were written and read prior to June

20  30, 2011, or the return of any Grand Jury indictments against Mr. Smith.

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 18

Following the seizure of the data, the Government continued with its investigation. It was not until a year and a half later, on January 23, 2013, that a grand jury returned an indictment for Defendants. ECF No. 1 at 21. Therefore, the Sixth Amendment right to counsel had not yet attached, and Mr. Smith's Sixth Amendment rights were not violated by the seizure of those potentially privileged e-mails.

Moreover, the seizure of those e-mails did not become a Sixth Amendment violation upon the filing of the indictment. *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1117 (10th Cir.1998) (holding that the seizure of attorney-client communications prior to indictment did not become a Sixth Amendment violation once the indictment was filed).

Mr. Smith directs this Court to *United States v. Danielson*, 325 F.3d 1054, (9th Cir. 2003). *Danielson*, however, is inapplicable to the facts of this case. First, the defendant in *Danielson* already had been indicted when the alleged government intrusion into the attorney-client relationship occurred. *Id.* at 1060. Second, the defendant had appointed counsel during the period in which the government intrusion took place. *Id.* at 1059, 1062. The government intrusion was specifically related to the defendant's trial strategy as he had discussed it with his appointed counsel. *Id.* at 1062. Additionally, the defendant's counsel was appointed to represent him in the same trial for which the government improperly learned of

1   defense trial strategy.  *Id.* at 1066-67.  ("The government's [intrusion] to obtain

2   [defendant's] statements regarding separate offenses for which he had not been

3   indicted . . . was not an impermissible intrusion into the attorney client privilege

4   and therefore did not violate his Sixth Amendment rights. . . . The information

5   sought and obtained . . . however, was not limited to information regarding

6   separate offenses.")  *Id.* at 1066.

7          The facts in Mr. Smith's case are directly contrary to those in *Danielson*.  In

8   contrast to *Danielson*, Mr. Smith is proceeding pro se, and although he has had

9   appointed counsel at the beginning of this case, that appointed counsel was not the

10  same attorney with whom Mr. Smith was conversing in the e-mails at issue.

11  Moreover, Mr. Smith had not yet been indicted, nor had any formal adversary

12  proceedings been initiated against him, when the e-mails were written or seized.

13  Finally, because the e-mails in question were written at least a full year and a half

14  prior to the indictment in this case, and with an attorney who never represented Mr.

15  Smith in this matter, the contents of the e-mails cannot plausibly pertain to Mr.

16  Smith's trial strategy in this case.

17         *Danielson* sets out a framework of analysis upon an allegation that a

18  defendant's Sixth Amendment right to counsel has been violated by a government

19

20

ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ~ 20

intrusion into the attorney client privilege.[3]  However, because the Sixth Amendment does not apply to the e-mails, the search and seizure of those e-mails, or any possible government intrusions into those e-mails, this Court need not determine whether AUSA Parisi did in fact view those e-mails, or whether Mr. Smith has suffered prejudice as a result.[4]

---

[3] The Ninth Circuit has held that a defendant who argues that the government violated his Sixth Amendment right to counsel by obtaining privileged information about the defendant's trial strategy must make a "prima facie showing of prejudice." *Danielson*, 325 F.3d at 1071 (discussing *United States v. Mastroianni*, 749 F.2d 900, 907-08 (1st Cir. 1984)).  Establishing a prima facie case of prejudice requires showing that a government informant "acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information." *Id.*  Once a prima facie case is established, "the burden shifts to the government to show that there has been . . . no prejudice to the defendant[] as a result of these communications." *Id.* (quoting *Mastroianni*, 749 F.2d at 908) (alteration in *Danielson*).  The government bears a "heavy burden" in showing lack of prejudice once the defendant has made out a prima facie case.  *Id.*

[4] The Court also notes that the debate regarding whether the e-mails require minimal processing, or some processing, or substantial processing, is just parsing words.  When asked by the Court, Mr. Smith acknowledged at the hearing that

1    Finally, although Mr. Smith did not raise a Fifth Amendment claim

2    regarding the alleged government intrusion into his attorney-client privilege, the

3    Court notes for Mr. Smith's benefit that the facts as alleged by Mr. Smith do not

4    rise to the level of "flagrant prosecutorial misconduct," as is required in order to

5    grant dismissal under the Fifth Amendment.  *Chapman*, 524 F.3d at 1085 (quoting

6    *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir 1991)) (internal quotation

7    marks omitted) *abrogated on other grounds by United States v. W.R. Grace*, 526

8    F.3d 499, 511 n.9 (9th Cir. 2008).

9        Although AUSA Parisi admits to having had physical custody of the defense

10   discovery drive containing the e-mails in question, ECF No. 399 at 8-9, there is no

11   evidence that AUSA Parisi obtained custody of the hard drive for any reason other

12   than to ensure that all of the discovery files were included on the drive.  See ECF

13   No. 393 Ex. A.  AUSA Parisi assigned another attorney, who is not part of the

14   litigation team, to review the Google, Inc. data for any e-mails that may be

15   privileged.  Considering the age of the e-mails, the fact that the attorney included

16   on the e-mails is not, and never has been, Mr. Smith's attorney of representation in

17   even opening one of the MBOX files in a plain text reader constitutes "some

18   processing," though it may be minimal.  There is no requirement that the files

19   require any processing at all.  Under *Danielson*, the mere possession of the files by

20   the Government shifts the burden to the Government to prove non-use.

this case, the improbability that the e-mails contain any trial strategy as it pertains

to this case, and the utter lack of evidence that AUSA Parisi even viewed the files,

let alone obtained some useful information from them that will inform the

Government's trial strategy, AUSA Parisi's conduct does not rise to the level of

"flagrant prosecutorial misconduct."  For similar reasons, there is no evidence that

Mr. Smith has suffered substantial prejudice from AUSA Parisi's temporary

possession of the hard drive.

This Court also denies Mr. Smith's alternative requests that AUSA Parisi be

disqualified from this case, or that this Court suppress the Google, Inc. discovery,

for the same reasons noted earlier with respect to Mr. Smith's other Motion to

Dismiss, ECF No. 390.  Therefore, Defendants' motion, ECF No. 393, is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Dismissal or in the Alternate an Order

    Compelling Production and Granting a Continuance, **ECF No. 389**, is

    **DENIED in part and RESERVED in part**;

2.  Defendants' Verified Report of Felony Violations Pursuant to 18 U.S.C.

    § 4; Professional Misconduct (28 U.S.C. § 530B), Due Process

    Violations; and Motion for Relief, **ECF No. 390**, is **DENIED**; and

/ / /

/ / /

3.  Defendants' Motion to Dismiss Case or Disqualify Counsel for Plaintiff,

**ECF NO. 393**, is **DENIED**.

The District Court Clerk is directed to enter this Order and to provide copies

to counsel and to *pro se* Defendant Louis Daniel Smith.

**DATED** this 31st day of October 2014.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge