FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 13 2015

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

**WILLIAM J. WAGENER,**
PRODUCER FOR ON SECOND THOUGHT TV
CHANNEL 25 SANTA MARIA CALIFORNIA
910 OAKWOOD AVE.
SANTA MARIA, CA 93454
  Tel: (805) 928-1100
  Producer@OnSecondThought.tv
PETITIONER

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# SPOKANE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br> Plaintiff.<br>v.<br>LOUIS DANIEL SMITH,<br> Defendant.<br><br>_____<br>_____<br>WILLIAM J. WAGENER,<br> Petitioner. | Case No.: CR-13-00014-RMP<br><br>MOTION BY MEDIA TO VIDEO RECORD THE CASE;<br>MEMORANDUM OF POINTS & AUTHORITIES<br><br>ALTERNATIVE PROPOSAL<br><br>AFFIDAVIT IN SUPPORT<br><br>MOTION TO EXPEDITE<br><br>Presiding: Rosanna Malouf Peterson<br>Date: March 2, 2015<br>Time: 8:30AM |

TO THE ABOVE ENTITLED COURT, THE US ATTORNEY, AND MR. SMITH,

 I am a professional member of the media and have my own television show, "On Second Thought TV", which broadcasts live on Air Com 17 in Santa Barbara California, throughout the Internet, and by various syndications. I have recently been offered syndication on a cable channel in Spokane Washington. I have also studied law for three years, but never sat for the bar as my first calling and passion has always been that of a video journalist. I believe video is the most

RECEIVED

FEB 13 2015

CLERK, U.S. DISTRICT COURT
SPOKANE, WA

powerful means of documentation in modern society. The primary focus of my television show and media work is to expose government corruption and to protect the civil liberties of my fellow Americans. My television show exists to expose government corruption as it occurs and those who engage in such corruption.

I have been video documenting crime that local, state, and federal officials have been foisting upon the American People for at least 20 years. This case was brought to my attention more than a year ago. As I have watched it unfold, I have become deeply concerned about what I have seen. I am hereby making this request to have the remainder of all proceedings, including the trial, video recorded as they occur.

After reviewing the record in this case, I can only say that this is one of the worst cases I have ever seen all the way around. Here we have a group of four individuals with no criminal background facing almost 40 years in prison for selling a water purification product with no harmed party and questionable grounds for the case even being brought. In fact, it appears Mr. Smith was attempting to cooperate with the FDA. This should be a civil matter at worst. Outside of that, Mrs. Peterson, the tactics you have been using while presiding over this case are ones I have witnessed judges using elsewhere, and I consider them to be no less than criminal. After reviewing the record, here is a summary of the questionable actions I have seen so far:

- Changing and altering facts in your rulings to suit the Government and to help make the defendants appear guilty before a trial of the case has even commenced.
- Not following the Federal Rules since doing so would apparently put the Government at a disadvantage and, in the process, misrepresenting the defense's arguments to suit a misapplication of the law.
- Allowing the Government to file false pleadings and effectively working with the prosecution to sweep these false pleadings under the rug.
- Accepting, as true, unsworn statements by the prosecution over sworn statements to the contrary by experts and litigants without any rational basis (similar to changing facts)!
- Giving the Government a "free pass" to slander defendants' character and reputation in the media by use of false, misleading, and extrajudicial statements, for example, by calling them "Snake-Oil Salesmen!" That is outrageous! The Government should be sanctioned for this! Not only that, but it effectively taints the jury pool to allow the prosecution to use their office to prejudice the defense. These statements are still up on their website! When did this become okay?
- Allowing the Government to liberally search, seize and retain upwards of 10 years of private emails, where only 4 years were applicable, and allowing the Government to not comply with prior orders to seal emails outside the scope of the warrants. By allowing the Government to retain and put all those emails into the case, including ones that are outside

    of the scope of the case, you have effectively destroyed the 4th Amendment. In essence, your rulings not only allow, but in fact encourage any government agency with police powers to go through every aspect of a person's life either physical or electronic with no barriers whatsoever, strip them of their dignity and then allow that agency to use all of what is found to press charges at will on anything they can dream up, even where the magistrate appears to have required a waiver of what I understand to be "the plain view

doctrine."
- Ignoring complaints for over a year by the defense that the Government failed to produce important discovery, and covering for its failure to do so after-the-fact. Hide and seek is a game and such conduct is consistent with what Judge Kozinski wrote in his dissent in U.S. v. Olson 704 F.3d 1172, 1177 (9th Cir. 2013), "There is an epidemic of Brady violations abroad in the land. Only judges can put a stop to it." However, you, Judge Peterson, have effectively invited the prosecution to continue to engage in this conduct! The burden has been on the defendants to keep showing this over and over. You don't seem to be interested in holding the prosecution accountable for not giving all the evidence over, some of which shows their malfeasance (and this might be why).
- One of the worst issues (and one I confess I have never seen before) amounts to allowing the prosecution to bypass its own "firewall" to obtain defense attorney-client privilege emails that detail defense strategy without sanction or even holding an evidentiary hearing (this is outrageous!). Apparently, there is no attorney client privilege anymore. So, has the prosecution secured my phone calls and emails with Mr. Smith? Because that's next. If you allow the government the comfort to trample on an individual this badly, you are going to do it to the press at some point! Apparently, you, Judge Peterson, also read these emails in chambers and I guess they referenced you?
- Allowing the Government to seize all business records and member lists of a private association, violating not only the rights of defendants but also thousands of others. Do you want a list of those people who I know view my TV show?
- Withholding from the record and refusing to allow pleadings to be filed, and apparently in some instances, even returning them unfiled. This is something I have seen go on way too often. The clerks and judges in some courts often collude to keep defendants from raising any defense at all. But in this case, it doesn't seem to matter since it appears you are going to rule against them anyway, and in some instances it seems you have a denial template that suggests you don't even read the pleadings and just use the template to deny. That is embarrassing, but yet I saw examples to suggest to me that you have in fact done this.
- There is also an allegation by more than a few people who have said that you attended Mr. Smith's arraignment! That is not a neutral act. If you were in fact there, that is over the top! That means you had an interest in the case and should never have taken it on. One person noted the magistrate made eye contact and head gestures to you while the hearing was going on. I have never heard or witnessed anything like this. I have also learned that Mr. Smith had a civil case before you previously where the prosecution was the defense. This suggests you had no business being there at all, not even on accident.
- Apparently, you have also turned a blind eye to the Government's use of inadmissible, highly inflammatory, hearsay testimony in order to prejudice the grand jury. I wish I could be more upset at this, but it seems to happen all time.
- More recently, it appears you severed the defendants on spurious grounds where you previously ruled against doing such in order to help the government secure wrongful convictions in what appears to amount to extorted plea agreements (a common practice).
- There is also suggestion or evidence that your chambers have been talking to and colluding with the prosecution. Some of the tactics used at these later dates of the case do

seem to show that you are engaged in this process. I have seen this happen before many times.

By my estimation, you have sanctioned and guaranteed the Government's continued wholesale violation of First, Fourth, Fifth, Sixth and other Amendments. Any citizen facing charges that goes before you should be aware of your mode of operation, and particularly, your apparent inability to make a single adverse ruling against the Government – and especially when a defendant is pro se. The actions I am seeing here as well as the fact that the defendants in this case were effectively all facing a life sentence (by this I mean, they are in a position where they could easily spend the rest of their lives in jail), makes such behavior even worse.

It would appear you are in fact working with the prosecution in this flimsy case to help secure convictions of the defendants. Anyone in the same position as the defendants in this case should be able to expect a fair and neutral judge with a fair process and fair admission of facts with due process and the right to fair hearings. It would seem instead that your conduct as reported by US Observer, News With Views, Before Its News, and similar sources, may have set you early-on at insurmountable odds against one defendant in this case (Mr. Smith), calling into question whether or not he or his co-defendants could ever receive a fair trial with you presiding in the first place. This is no exaggeration.

I have read portions of the congressional record of your 2010 confirmation where Senators Murray and Cantwell vouched for you "fairness, evenhandedness, and adherence to the law." It is clear from what I have read, that fairness, impartiality, and adherence to the law, is the primary concern of the Senate when confirming new Federal Judges to the bench, but you have not demonstrated that in this case. It makes me wonder how fair you are in other cases.

I have noted that Mr. Smith points out in one of his briefs that Senator Sessions from Alabama stated during one proceeding, "I will note that if a judge who is about to obtain a lifetime appointment fails to convince Members of the Senate that they are committed to faithfully following the law, being a neutral umpire, not favoring one side in the "ball game'" over the other - if they are not committed to that, then they should not be confirmed. Or if they have other weaknesses, such as lack of skill, or a demonstrated bias, or a lack of background and ability, then I think they should be examined closely and not confirmed."

Mrs. Peterson, it is clear from the record that you are not committed to being a neutral umpire. Maybe you were *before* your appointment, but like many judges I have seen, it appears that it has not taken long for you to lose your way. Again, I consider you a dangerous judge and I believe Mr. Smith and his codefendants are in a precarious situation.

I have witnessed the power of corrupt judges to make trials unfair as well. This includes preventing evidence material to a defendant's innocence from being presented at trial and other similar actions. I have witnessed other similar acts by judges including (but not limited to) the denigration of witnesses for the defense by a judge in front of a jury and other such acts to clearly help secure a wrongful conviction. Another tactic I have witnesses judges engage in includes making spurious rulings during trial, which are generally for the prosecution and against the defendant. The prosecutor merely states his "Objection" and the Judge simply sustains it and thereby removes the defendants' ability to get his proper evidence on the record for a fair appeal. In my opinion, you are likely to do this. Considering the shameless rulings you have made so far, I would assume that you plan on doing this at Mr. Smith's upcoming trial. In fact, based on your

conduct in totality, anyone could assume you would engage in these very acts. I not only believe you are capable of doing this, but considering your record of clear disregard for the rights of Mr. Smith and his co-defendants, it would appear that you are trying to make it so that, if convicted, they would have extreme difficulty fighting their case on appeal. By that I mean that you have littered the record with what appears to be misrepresentations of both fact and argument to such a degree, that it would be a mess for any appellant or Appellate Court to sort fact from fiction and insure that justice is done.

With all of this in mind, **I believe that the only way to give this case *some* remote semblance of fairness is to video record *all* future hearings and the trial**. I am aware of the authorities on this matter and I know the difficulty in doing what I am asking. However, I believe that properly asserted the right to record is clear.

## MY RECORD

I have been a pioneer in video documenting Government corruption and I am an outspoken advocate for the First Amendment through video media. I have taped numerous cases in courtrooms all across America. I have fought to get a camera in courtrooms where none had been previously allowed. One of my more recent achievements was to help turn the camera back on in the Fullerton Murder Trial. It was the case where two Fullerton Police officers, Jay Patric and Cincinelli Ramos, killed the disabled man, Kelly Thomas, and the murder was videotaped and the footage was shown all around the nation. The media videotaped all the hearings right up to trial. However, at trial, Judge Fromberg, without notice ordered the camera's to be turned off. What a surprise! I filed a motion to turn the cameras back on and successfully helped argue in a hearing during the trial to have the camera turned back on. This is why the video of the closing arguments in that case is available for the American People to see today. As the court opined in Craig v. Harney, 331 US 367, 374 (1947), "What transpires in the courtroom is public property" and should the be available to the public at large, not to a select few who can take off work to attend a proceeding or afford to purchase costly transcripts.

I wish to argue similarly in this case, and the precedents support my position, even if it may appear to you they may not. I consider the ability of the press to record trial *essential* to liberty and fair justice. This is especially true when the presiding judge is so obviously hostile to a defendant in a case such as this. In fact, I consider it the *only possible way* that Mr. Smith will get a fair trial.

Now then, in this motion, I am asking to allow the recording of any and all hearings henceforth including the trial. I am well aware that Federal Courts do not typically allow proceedings to be recorded except for a few narrow exceptions. Further, criminal cases are of a particular concern since Federal Rules of Criminal Procedure, Rule 53, is generally against the allowance of photography and broadcasting. However, I deal with that authority below.

It is clear, the presumption is for the citizens and their media to have the right to view what goes on in the courts of America, even if it is to the chagrin of the judges presiding over them. That is the only way, we as People may remain free. An honest and fair judge should feel quite at ease with a video recorder in their courtroom knowing it will allow for the check of corruption.

    Sincerely,

_William J. Wagener_        _10 February 2015_
William J. Wagener                                                 Date

## MEMORANDUM OF POINTS AND AUTHORITIES
### I. CASE BACKGROUND

This case involves four criminal defendants indicted for selling what appears to be two lawful compounds - sodium chlorite solution and citric acid solution, which apparently the U.S. Government, Red Cross, and many municipalities across America have used and still use, to purify water. Apparently the Government is arguing that these compounds are not lawful, or that when mixed together, they form a drug. Sodium chlorite and citric acid are both readily available on the Internet, sodium chlorite, under various names including MMS, Aquamira, and Stabilized Oxygen. No one (outside of a questionable single circumstance) has ever been harmed by it!

For this, Mr. Smith and his co-defendants have been sacked in their own homes and businesses as though they were mafia king pins selling heroine. They have had their possessions not only taken, but also sold before even being tried or convicted. This all happened even though it appears that neither "MMS" nor "sodium chlorite" are controlled substances and are clearly widely available on the Internet (go to EBay, it's on sale there now!). It appears that the Government wants to make an example out of Mr. Smith for having sold MMS as a private association even though the FDA never objected when asked.

I am compelled with the evidence I have seen showing that Mr. Smith contacted the FDA in 2010 to see if they had any legal objection to what he was doing and seeing that the FDA declined to answer, even though they had engaged each other prior, and it appears Mr. Smith was exceedingly cooperative. That is powerful to me. Mr. Smith engaged the FDA and they did not respond. Instead, they maliciously sacked him and pressed charges knowing their year of silence had intentionally misled Mr. Smith.

       The Government obtained a number of warrants in 2011 and the agents did not even follow the warrants' procedures. Again, one warrant was used to seize what appears to be 10 years worth of private emails, even though the alleged criminal actions occurred in a 4 year window. So, effectively, they used this warrant to go through Mr. Smith's entire life even though it was not in the time of the conflict. The case is riddled with impropriety on the part of government agents and the prosecution.

       Mr. Smith has taken up his defense after being crippled by the Government's tactics. Numerous motions have been filed, particularly by Mr. Smith who is representing himself. Most, if not all of his motions, have been ignored or dismissed, in some instances, so brazenly that its clear a template has been made by either the judge or her clerks to summarily deny the relief Mr. Smith has sought.

There appears to be a systematic discrimination against Mr. Smith because he is self-represented. More recently it appears the prosecution and the Judge have been colluding to bill Mr. Smith out as a domestic terrorist. This is truly absurd!

       After two years of mind-boggling discovery disputes, all in which the Court refuses to hold the government accountable, trial is now set for March 2, 2015. On Second Thought TV wishes to video record all hearings leading up to trial and going forward.

### II. PROCEDURAL BACKGROUND

Petitioner is moving this court to allow him to video record the proceedings of this case up to and through trial. The request is made under the First Amendment to the trial court and as such, is proper.

As a member of the media, petitioner has sufficient standing to make such a motion, though petitioner is reticent that the judge presiding in this matter is likely going to be hostile to such a motion, and possibly even to the petitioner, especially since it might capture the misconduct of this Chief Judge before a much a wider audience.

It would seem that almost every case in the 9th Circuit Court of Appeals is now being video recorded; the review of a criminal trial should be no less, and in fact, even more-so under the present circumstances.

Petitioner has secured a waiver from Mr. Smith to record his trial. State criminal trials are often denied media recording due to concern that the defendant will not have a fair trial. This circumstance places that notion on its head and in fact notes that video coverage is *essential* to the defendant having a fair trial.

Petitioner can work within the spirit and intent of Federal Rule of Criminal Procedure 53 to videotape and simultaneously protect the public interest.

### III. ARGUMENTS

**A. Interest of the Media**

1. Exposure of Corruption

It is difficult to downplay the interest of the media in this matter, especially in such an important case as it involves many of the issues that our founders established the first amendment for, which is overseeing those who govern us:

> "*In the First Amendment, the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. The press was to serve the governed, not the governors.* **The Government's power to censor the press was abolished so that the press would remain forever free to censure the Government.** *The press was protected so that it could bare the secrets of government and inform the people.* <u>*Only a free and unrestrained press can effectively expose deception in government.* And *paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people*</u> . . . " *New York Times v. United States, 403 US 717 (1971)(emphasis supplied).*

2. Opportunities for Malfeasance

As the old expression goes: "Seeing is believing" and in order for the citizens to believe the process is fair, it is essential if not imperative for them to be able to see this trial as fair. The U.S. Supreme Court once noted how complex government and its proceedings have become. This complexity gives rise to more concern when the ability to see Justice "in action" is denied and that in turn opens more questions as to the propriety and fairness of the process:

> "... *the administration of government has become more complex, the opportunities for malfeasance and corruption have multiplied, crime has grown to most serious proportions, and the danger of its protection by unfaithful officials and of the impairment of the fundamental security of life and property by criminal alliances and official neglect,*

*emphasizes the primary need of a vigilant and courageous press, especially in great cities."* Near v. Minnesota, 283 US 697, 719-720 (1931)

The complexity in Government at this time is simply amazing. Just reviewing Mrs. Peterson's apparent collusions with U.S. Attorney and prosecutor Parisi demonstrates how every action they make needs to be closely watched and recorded, for to do less is to open the door to a complete injustice.

3. Part of the duty of the press is to oversee the Judiciary
   *"For their part, courts are unrepresentative and undemocratic. The very independence that protects them also insulates them from public control or ouster. A free press subjects them to the harsh glare of public scrutiny."* The Majesty of the Law: Reflections of a Supreme Court Justice by Sandra Day O'Connor, Pg. 260

4. Recording is a necessity of Publicity
Simply put: "Without publicity all other checks are insufficient; in comparison of publicity, all other checks are of small account" – Jeremy Bentham (1748-1832)

5. Due Process concerns
The recording of this case will serve to protect Mr. Smith and his right to due process: *"The Due Process Clause was intended to secure an individual from an abuse of power by government officials."* Daniels v. Williams, 474 U.S. 327 (1986). To date, Mr. Smith's rights to due process have been substantially harmed.

6. We want a "Just" result
   This case, nay all cases require a just result: *"For my part, I do not believe that any amount of pro se pleading can cure the injury to society of an unjust result, but I do believe that a just result should prove to be an effective balm for almost any frustrated pro se defendant."* (Blackmun) Faretta v. California, 422 U.S. 806, 849(1975)

7. The long-standing trend is to remove the press
The disturbing trend is that the press is kept out.
   *"Judge J. Skelly Wright, of the U. S. Court of Appeals in Washington, has been harshly critical of recent efforts by lawyers and the judiciary to restrict press coverage of the police and courts. 'In addition to being unconstitutional, external controls on the press are Wrong politically, socially and historically.' A healthy democracy requires fresh air and life. Public Officials, including judges, prosecutors and the police, function best in a goldfish bowl. To place attorneys' offices of this country off limits to the press, would in my judgment, be a massive disservice to the cause of criminal justice. We need more and more affirmative laws and actions, more and more willingness to share facts with the people. Not more and more laws and actions designed to withhold or to distort these facts."* Corpus Christy Times May 13. 1964 Pg. 41

### B. Recording Right is Presumed
1. The presumption is to allow recording, particularly in civil cases
There is a solid presumption that civil hearings can be taped upon request.
> *"There is a presumption that all . . . proceedings, absent compelling reasons, should be open to the media for audio-visual coverage so long as it can be done within the confines of proper decorum and without harm to specifically protected rights."* **Oles v. Houston 135 Misc 2d 1075, 525 NYS 2d 1008**

2. Criminal Cases
a. Fairness to the Defendant
    The general concern in recording a criminal case is with the fairness to the defendant who is up against the full power of the state.
*"The massive, pervasive, and prejudicial publicity attending petitioner's prosecution prevented him from receiving a fair trial consistent with the Due Process Clause of the Fourteenth Amendment." Sheppard v. Maxwell, 384 U.S. 333 (1966)*
    Indeed, it is with the interest of the defendant that Rule 53 was created. Rule 53 states: "Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom."
    In the advisory Committee that created Rule 53, it was noted that:
"While the matter to which the rule refers has not been a problem in the Federal courts as it has been in some State tribunals, the rule was nevertheless included with a view to giving expression to a standard which should govern the conduct of judicial proceedings," Orfield, 22 Texas L.R. 194, 222–3; Robbins, 21 A.B.A. Jour. 301, 304. See, also, *Report of the Special Committee on Cooperation between Press, Radio and Bar, as to Publicity Interfering with Fair Trial of Judicial and Quasi-Judicial Proceedings* (1937), 62 A.B.A.Rep. 851, 862–865; (1932) 18 A.B.A.Jour. 762; (1926) 12 *Id.* 488; (1925) 11 *Id.* 64.
    The clear intent was to protect the defendants right to a fair trial. Petitioner notes that this is not at issue here. The right of a defendant to have a fair trial is at question if the videotape is *not* granted.

b. Two issues
i. Constitutionality
    At the very least, this crosses the line over the First Amendment. Does the government have a more "compelling interest" in this matter than guaranteeing a fair trial? **Further, in this case, it is more the issue that Rule 53 will serve to insulate the Judge from proper oversight and not the defendant who the rule is supposed to protect.** As Jeremy Bentham noted: "Without publicity all other checks are insufficient; in comparison of publicity, all other checks are of small account".

ii. Compromise
    Petitioner can videotape the proceedings and then release them after the trial. Rule 53 only

notes "the broadcasting of judicial proceedings from the courtroom." Petitioner would not broadcast from the hearings. He will merely record and broadcast elsewhere or at another time.

### 3. Public Property
Videotaping also has an effect of keeping things on the up and up, and what transpires in a Courtroom is effectively the property of the citizens.
> "*A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials, **but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.** This Court has, therefore, been unwilling to place any direct limitations on the freedom traditionally exercised by the news media for "[w]hat transpires in the courtroom is public property.*" Craig v. Harney, 331 US 367, 374 (1947)

### C. Granting/Denying of Request
As noted above, the presumption is that barring a reason to the negative, the case can and should be recorded. If there is a reason to the negative, there may be a sound rebuttal.

1. The Courts have controlling Authority over this matter, but a hearing is necessary.
The Trial Judge may make a determination granting or denying this request.
> "*The Courtroom and Courthouse premises are subject to the control of the court, and <u>courts may impose restrictions upon media access to courtrooms and courthouse premises when necessary</u> to protect and facilitate the proper administration of the judicial system.*" Sheppard v. Maxwell, 384 US 333 (1966)

2. Prior blanket **prevention** of recording amounts to a Prior Restraint
Prior restraints are heavily disfavored. "*Any system of prior restraint . . . [bears] a heavy presumption against its constitutional validity.*" Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963); see also Near v. Minnesota, 283 U.S. 697 (1931). The Government "*thus carries a heavy burden of showing justification for the imposition of such a restraint.*" OFAB Austin v. Keefe, 402 U.S. 415, 419 (1971).

3. Such a decision against a citizen cannot just be the personal opinion of the Judge.
> "*The right to equal protection of the laws, in the exercise of those freedoms . . . protected by the First and Fourteenth Amendments, has a firmer foundation than . . . personal opinions . . .*" Niemotko v. Maryland, 340 US 268 (1951)

There is a heavy burden to secure prior restraint to prevent videotaping in any case. If there is a suggestion that the media may not video tape a case, there must be some nexus between the reason and the denial, otherwise, we will have unlawfully destroyed the media's right.
> "[I]mperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if

desired, may be obtained by peaceful means. Therein lies the security of the Republic, the very foundation of constitutional government." *De Jonge v. Oregon,* 299 U. S. 353, 365.

**D. A hearing on the merits of recordings should be held.**
1. Such decisions require fully pled hearings
This is not a summary proceeding; there is a duty to hold a hearing:

> "*The procedural process which necessarily follows from the trial judge's discretionary authority and from applying the qualitative different test requires an expeditious hearing in all cases where proper motions to exclude the electronic media are presented.  A proper motion should set forth facts that, if proved would justify the entry of a restrictive order. General assertions or allegations are insufficient.  The trial court must allow the affected media to participate in the hearing although all parties must recognize that these proceedings are collateral and, as such, should not unnecessarily delay the main proceeding, particularly in criminal matters where the right to a speedy trial may be adversely affected.*"  State v. Green (Fla) 395 So 2d 532, 7 Media LR 1025, on remand (Fla 11th Cir Ct) 7 Media LR 1884

2. An Evidentiary hearing
The hearing should be evidentiary so that all facts relevant to this issue may be presented. "*An evidentiary hearing should be allowed in all cases to elicit relevant facts if these points are made an issue,*" **State v. Palm Beach Newspapers Onc. (Fla) 395 Sp 2d 544, Media LR 1021**

**E. Competing Interests**
1. Interest of the Press
To be sure, there are competing interests in this issue.  This includes a fair trial for both the plaintiff and the defendants.  However, as an investigative Journalist, I also have an interest in due process and accountability of our government, I wish to be able to observe these hearings because of the effects on oversight this matter has to do with.  For this oversight to be effective, many people need to be able to witness this, especially since they are not able to do so in person. This makes the witnessing effective.

2. Informing the citizens
Citizens need to be informed of this case due to its gravity.  Further, most people simply are unable in their day-to-day activities to make it to important hearings and using video recording will allow more people to be aware of this case and witness it for themselves.

> "*It has been noted that local knowledge of the proceedings will be of no greater proportionately with electronic media than when this country was primarily agrarian and common-place court attendance resulted in widespread knowledge of courtroom proceedings. As our society has become more complex and urbanized, more citizens have become dependent on the media for courtroom knowledge rather than actual observation. The camera's physical presence in the courtroom once again allows, to a limited extent, personal observations of the judicial process.*" State v. Green (Fla) 395 So 2d 532, 7 Media

LR 1025, on remand (Fla 11th Cir Ct) 7 Media LR 1884

### 3. Judicial Integrity

Canon 1 of the Code of Conduct is that "*A judge shall uphold and promote the, independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.*" Closing the Courthouse to videotaping will appear both partial in these circumstances, and improper.

### 4. The presumption is the right of the media

Perhaps the most powerful presumption is that of the citizen's media rights over the Government.

> "Madison prepared the Report . . . [h]is premise was that the Constitution created a form of government under which 'The people, not the government, possess the absolute sovereignty.' The structure of the government-dispersed power in reflection of the people's distrust of concentrated power, and of power itself at all levels. This form of government was 'altogether different' from the British form, under which the Crown was sovereign and the people were subjects. 'Is [376 U. S. 275] it not natural and necessary, under such different circumstances,' he asked, 'that a different degree of freedom in the use of the press should be contemplated?' Id., pp. 569-570. Earlier, in a debate in the House of Representatives, Madison had said: 'If we advert to the nature of Republican Government, we shall find that the censorial power is in the people over the Government, and not in the Government over the people.'" New York Times v. Sullivan, 376 US 254, 274-275 (1964)

This is especially true in Judicial Proceedings: "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Com v. Viginia, 435 US 829, 839 and "A major purpose of the First Amendment . . . includes . . . the operations of the courts and judicial conduct," Ibid at 839 (The direct holding of the Landmark case!).

## IV. IF GRANTED

If this request to record these proceedings is granted, I will act in all diligence to record the hearings in such a manner to not disturb the case or the participants. Further, I gladly agree in advance to license any and all recordings upon request any footage gained to any other media outlet. Therefore, I hereby ask this court to grant me the ability to film the proceedings of this case to its conclusion.

## V. ALTERNATIVE PROPOSAL

If the concern is that recordings of the case will somehow bias or taint the trial (not the hearings) if the footage is released during the trial, we can record the trial hearings and then place the media under seal to be released only after the trial is over. This would be an effective compromise that would satisfy all concerns and make sure the defendants get a fair trial.

## VI. OTHER CONSIDERATIONS

      I will gladly give Mr. Parisi and Judge Peterson the opportunity to respond and rebut anything I have commented on or reported here. I welcome you both to refute any statement made. I have been careful to go over the record and the documentation provided. It is possible I have overlooked something. I think, however, my assessment is correct, it very much looks like you have engaged in acts that are akin to Star Chamber Proceedings, but I would still like to give you an opportunity to explain this away – to be fair – and I will sit and look over all your documentation, presumably to the contrary. I will gladly retract anything that is inaccurate on my part. My contact information is at the top of this pleading. Please feel free to call. You can expect a call from me.

## VII. CONCLUSION

      I ask that I be granted the ability to video tape the entire case from now through trial. Judge Peterson, I do not expect for a minute that you will grant this motion. But I am asking for your response either for, or against. I consider the stakes in this matter to be so high between the FDA wanting to set new precedent, the court's summary denial of all of Mr. Smith's arguments, and the absolute necessity of getting a camera in this case to shed light on it all.

As a concerned journalist, and after reviewing this outrageous case, I am concerned about retribution as well. I am preparing a Habeas Corpus petition just in case you order me to be arrested in the same malicious manner as US Attorney Parisi had Mr. Smith and his wife arrested in front of their eight year-old daughter. This was disgusting! I fought for this Country and things like this should just not be happening in America!

                        Sincerely,

_____          10 February 2015
William J. Wagener                                     Date

Cc: Sydney Powell, Greta Van Susteren, John Stossel, Shepard Smith, Bill O'Reilly, Bret Baier, Bill Dedman, Dateline NBC, 60 Minutes, 20/20, RIGHT Spokane Perspective, Glenn Beck, Happening Now (FOX), Sean Hannity, Fox News Watch, Fox New Sunday, Megyn Kelly, Rush Limbaugh, Drudge Report, Hugh Hewitt, Laura Ingraham, Bill Cunningham, FOX News Live, FOX News Specials, The Beltway Boys, The Big Story Primetime, America's Newsroom, Truth-Out, Blaze Media, End The Lie, USA Watchdog, Washington's Blog, Citizens United, WorldNetDaily, National Review, Weekly Standard, Lew Rockwell, Washington Times, Wall Street Journal, New York Times, USA Today, LA Times, Daily Times of New York, San Jose Mercury News, New York Post, Washington Post, Chicago Sun Times, Denver Post, Seattle Times, Tacoma News Tribune, Spokesman Review, Pacific Northwest Inlander, Oregonian, Bellingham Herald, Mail Tribune, Associated Press, Reuters, UPI, Electronic Frontier Foundation, Alex Jones (InfoWars), Mike Adams (Natural News), Judicial Conference of the United States, Rep. Cathy McMorris Rodgers, Rep. John Boehner, Rep. John L. Mica, Rep. Bob Goodlatte, Rep. Lamar Smith, Rep. Darrell Issa, Rep. Steve King, Rep. Louie Gohmert, Rep. Ted Poe, Rep. Tom Marino, Rep. Raul Labrador, Rep. Doug Collins, Rep. Mimi Walters, Rep. John Ratcliffe, Rep. Mike Bishop, Rep. Jim Sensenbrenner Jr., Rep. Steve Chabot, Rep. Randy Forbes, Rep. Trent Franks, Rep. Jim

Jordan, Rep. Jason Chaffetz, Rep. Trey Gowdy, Rep. Blake Farenthold, Rep. Ron DeSantis, Rep. Ken Buck, Rep. Dave Trott, Rep. Justin Amash, Rep. Raul Labrador, Rep. Thomas Massie, Rep. Mick Mulvaney, Rep. Mark Meadows, Rep. Jim Jordan, Rep. Martin Stutzman, Rep. Andrew P. Harris, Rep. Paul Gosar, Rep. Louie Gohmer, Rep. Mark Sanford, Rep. David Schweikert, Rep. Scott Garrett, Rep. Jimmy Duncan, Rep. Cynthia Lummis, Rep. Matt Salmon, Rep. Tom McClintock, Rep. Jim Bridenstie, Rep. Trey Gowdey, Rep. Walter B. Jones, Rep. Ron DeSantis, Rep. Ted Yoho, Rep. Jeff Duncan, Rep. Todd Rokita, Rep. Morgan Griffith, Rep. Reid Ribble, Rep. Jason T. Smith, Rep. Tim Huelskamp, Rep. Dana Rohrabacher, Rep. Chris Gibson, Rep. Ted Poe, Rep. Bill Posey, Rep. Curt Clawson, Rep. Michael C. Burgess, Rep. Dave Brat, Sen. Rand Paul, Sen. Mitch McConnell, Sen. Chuck Grassley, Sen. Orrin G. Hatch, Sen. Jeff Sessions, Sen. Lindsey Graham, Sen. John Cornyn, Sen. Michael S. Lee, Sen. Ted Cruz, Sen. Jeff Flake, Sen. David Vitter, Sen. David Perdue, Sen. Thom Tillis

## DECLARATION OF WILLIAM J. WAGENER

I, William J. Wagener, declare:

1. I am a Petitioner in this action and prepared this document for this pleading.
2. If called as a witness, I could and would testify to the matters stated herein.
3. I have secured Mr. Smith's waiver.
4. Signatures of other concerned citizen are being collected to have this case video-taped.

I declare under penalty of Perjury under the Laws of the United States the foregoing is true and correct.

_____      10 February 2015
William J. Wagener                        Date