UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>LOUIS DANIEL SMITH, also known as Daniel Smith, also known as Daniel Votino,<br><br>                    Defendant. | NO:  2:13-CR-14-RMP-1<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL |

BEFORE THE COURT is pro se Defendant Louis Daniel Smith's Motion for Judgment of Acquittal or in the Alternative for a New Trial, ECF No. 717, and Memorandum in Support, ECF No. 750.  The Court has reviewed the motion and memorandum, all relevant filings, including both Mr. Smith's Reply, ECF No. 757, and Mr. Smith's Amended Reply, ECF No. 758, and is fully informed.

## BACKGROUND

A grand jury indicted Defendant Smith on January 25, 2013, for one count of conspiracy, in violation of 18 U.S.C. § 371; four counts of introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. § 331(a); and

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 1

1  one count of smuggling, in violation of 18 U.S.C. § 545.  ECF No. 1.  A jury trial

2  commenced on May 18, 2015.  ECF No. 672.  On May 27, 2015, the jury returned

3  a verdict, finding Mr. Smith guilty of one count of conspiracy, three counts of

4  introducing misbranded drugs into interstate commerce with the intent to defraud,

5  and one count of smuggling.  ECF No. 692.  The jury acquitted Mr. Smith on count

6  five, introducing misbranded drugs into interstate commerce.  ECF No. 692.

7      During trial, Mr. Smith was represented by Assistant Federal Defender

8  Matthew Campbell.  Mr. Campbell moved for acquittal at the close of the United

9  States' case and he renewed the motion prior to closing arguments.  The Court

10  denied both motions.  Mr. Campbell subsequently filed a motion for Judgment of

11  Acquittal. ECF No. 718.  However, after the Court approved Mr. Smith's request

12  to proceed pro se, Mr. Smith moved to strike Mr. Campbell's motion for judgment

13  of acquittal.  ECF No. 737.  The Court granted that motion.  ECF No. 739.

**DISCUSSION**

**A.    Motion for Judgment of Acquittal**

16      In reviewing a motion for judgment of acquittal pursuant to Federal Rule of

17  Criminal Procedure 29(c), the Court must determine whether "viewing the

18  evidence in the light most favorable to the government, the jury could reasonably

19  find the defendant guilty beyond a reasonable doubt."  *United States v. Hazeem*,

20  679 F.2d 770, 772 (9th Cir. 1982); *United States v. Nevils*, 598 F.3d 1158, 1161

21  (9th Cir. 2010) (en banc).

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 2

Rule 29, therefore, presents a two-step inquiry. *Nevils*, 568 F.3d at 1164-65. First, the Court must review the evidence in the light most favorable to the United States. When "faced with a record of historical facts that supports conflicting inferences" the Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*(quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). Second, the Court must determine whether "any" rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

Mr. Smith argues that there was insufficient evidence to convict him for conspiracy, felony misbranding, or smuggling. Regarding the misbranding convictions, Mr. Smith argues that the United States failed to show that he knew that the manufacturing facility was not registered with the Secretary of Health and Human Services, that Mr. Smith expected someone to be misled by the lack of registration, or that Mr. Smith intended to defraud anyone by failing to oversee the registration of the manufacturing facility. Mr. Smith misunderstands the crime for which he was convicted.

Section 331(a) of Title 21 of the United States Code criminalizes the introduction of a misbranded drug into interstate commerce. 21 U.S.C. § 331(a). This crime may be charged either as a misdemeanor, which is a strict liability crime requiring no evidence of intent, or as a felony, requiring evidence of intent to

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 3

defraud or mislead.  *United States v. Dotterweich*, 320 U.S. 277, 284 (1943);

*United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002).  The intent element

applies to the act of introducing misbranded drugs into interstate commerce, not to

the act of misbranding the drugs.  21 U.S.C. § 331(a) (criminalizing the

introduction of misbranded drugs into interstate commerce, whereas § 331(b)

criminalizes the "adulteration or misbranding" of drugs).

Mr. Smith was indicted for felony introduction of misbranded drugs into

interstate commerce.  ECF No. 1.  Therefore, the United States was required to

prove that Mr. Smith acted with intent to defraud or mislead when he introduced

the drugs into interstate commerce.  The United States presented ample evidence in

the form of emails, testimony, and shipping documents from which a reasonable

jury could conclude that Mr. Smith intended to mislead authorities regarding the

purpose for which he intended sodium chlorite and MMS to be used when he

introduced the substances into interstate commerce.  Therefore, the United States

met its burden, and there is no basis for an acquittal regarding Counts 2 through 4.

Mr. Smith argues that there was insufficient evidence to convict him of

smuggling because the United States did not prove that Mr. Smith was the importer

of the sodium chlorite, that sodium chlorite was merchandise contrary to law when

it was imported, or that Mr. Smith intended to defraud anyone when he imported

the sodium chlorite.  Mr. Smith's definition of "importer" is incorrectly narrow.

An importer is someone who "brings an article into the country from the outside or

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 4

1   causes an article to be brought into a country from the outside."  ECF No. 690-1.

2   This is the ordinary meaning of "importer."  An importer need not be the

3   individual who personally transports the product over the border, nor is the

4   importer necessarily the individual listed on the customs form as the "importer."

5   There was competent testimony during trial explaining that the term "importer" on

6   the customs forms does not necessarily mean the person who has requested and

7   paid for the importation.

8          Additionally, Mr. Smith's name does appear on some of the customs forms.

9   Most importantly, PGL Waste Water Systems appears on the customs forms, and

10  the evidence showed that Mr. Smith owned and operated PGL Waste Water

11  Systems.  Additionally, the customs forms stated that the sodium chlorite was

12  being imported for use in water purification, but the evidence demonstrated that

13  Mr. Smith intended to use the sodium chlorite to manufacture MMS, a misbranded

14  and unregulated drug.  This evidence is sufficient for a reasonable jury to conclude

15  that Mr. Smith, with the intent to defraud, imported sodium chlorite contrary to

16  law.

17         Mr. Smith also argues that United States Trial Attorney Christopher Parisi

18  impermissibly argued during closing argument that Mr. Smith filled out the

19  shipping documents for the sodium chlorite himself.  Mr. Smith fails to provide a

20  citation to the transcript of Mr. Parisi's closing argument, and the Court's

21  recollection is that Mr. Parisi spoke generally of Mr. Smith as the importer or

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 5

argued that Mr. Smith requested the importation of sodium chlorite but never explicitly stated that Mr. Smith himself filled out the shipping documents as opposed to filling out other documents. Therefore, the Court finds this argument unpersuasive.

Finally, Mr. Smith briefly notes that the Court declined to answer the Jury's question regarding the definition of exporter. Mr. Smith fails to argue the significance of this omission. The Court may exercise discretion when responding to a jury note. *See United States v. Ninete*, 141 F. App'x 531 (9th Cir. 2005). The Court exercised its discretion when it concluded that the definition of "exporter" was irrelevant to the crimes charged and therefore declined to address it. Accordingly, the Court finds that there is no basis for acquittal on Count 6.

Mr. Smith argues that the Court must grant an acquittal on Count 1, conspiracy, because the United States failed to prove beyond a reasonable doubt that Mr. Smith smuggled the sodium chlorite into the United States or that he intended to defraud or mislead anyone. For the same reasons that the Court has denied Mr. Smith's motions for judgment of acquittal as to Counts 2 through 4 and Count 6, the Court denies Mr. Smith's motion for judgment of acquittal on Count 1.

**B.    Motion for New Trial**

Rule 33 of the Federal Rules of Criminal Procedure provides, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The district court need not

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 6

view the evidence in the light most favorable to the verdict; it may weigh the

evidence and in so doing evaluate for itself the credibility of the witnesses."

*United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir.

1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)). "If

the court concludes that, despite the abstract sufficiency of the evidence to sustain

the verdict, the evidence preponderates sufficiently heavily against the verdict that

a serious miscarriage of justice may have occurred, it may set aside the verdict,

grant a new trial, and submit the issues for determination by another jury." *Id.* at

1211-12 (quoting *Lincoln*, 630 F.2d at 1319).

     Mr. Smith argues that his counsel operated under a known conflict of

interest. "In order to demonstrate a violation of his Sixth Amendment rights,

a defendant must establish that an actual conflict of interest adversely

affected his lawyer's performance." *Culyer v. Sullivan*, 446 U.S. 335, 350

(1980). "[A] defendant who shows that a conflict of interest actually

affected the adequacy of his representation need not demonstrate prejudice

in order to obtain relief." *Id.* Even so, a defendant must still demonstrate

that his counsel "actively represented conflicting interests," for until he has

done so, he has not established the "constitutional predicate" for the

ineffective assistance claim. *Id.* at 350. "[A]n actual conflict of interest" is

"precisely a conflict *that affected counsel's performance* – as opposed to a

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 7

1  mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171

2  (2002) (emphasis in original).

3      Mr. Smith contends that his counsel, Mr. Campbell, operated under a

4  conflict of interest because a different attorney in his office, the Federal Defenders

5  of Washington, previously represented Linda Bridgeman when she was called to

6  testify before the grand jury.  Ms. Bridgeman allegedly testified before the grand

7  jury, yet the United States declined to call Ms. Bridgeman at trial.  Mr. Smith

8  claims that Ms. Bridgeman was a material witness for the defense, but she

9  allegedly refused to be interviewed by Mr. Campbell, citing her right to conflict-

10 free representation.  Mr. Smith argues that Ms. Bridgeman's refusal to be

11 interviewed or questioned by Mr. Campbell adversely affected Mr. Campbell's

12 performance.

13      Although Mr. Smith is not required to show prejudice in order to establish a

14 conflict of interest, he must show that there was an actual conflict of interest that

15 adversely affected counsel's performance.  Mr. Smith has not satisfied this

16 requirement because he fails to inform the Court how exactly Ms. Bridgeman

17 might have testified or how her testimony may have been material to the defense.

18 Without such information, there is no way for the Court to know whether Mr.

19 Campbell did not call Ms. Bridgeman to testify because she refused or rather he

20 simply elected not to call her based on sound trial strategy.

21

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 8

1    Additionally, this Court is not privy to what occurred during Ms.

2    Bridgeman's testimony in front of the grand jury and does not know the

3    methodology employed by the Federal Defender's office in determining conflicts.

4    The Court relies on the expertise of the Federal Defenders to determine whether an

5    actual conflict of interest exists.  In this case, the Federal Defenders determined

6    that the previous representation of Ms. Bridgeman did not present a conflict of

7    interest that prevented Mr. Campbell from representing Mr. Smith.   The Court

8    gives deference to that determination.

9    Mr. Smith also moves for a new trial on the basis of ineffective assistance of

10   counsel.  A defendant who brings a claim of ineffective assistance of counsel bears

11   the burden to meet a two part test.  First, a defendant must show that counsel's

12   performance was so deficient that it "fell below an objective standard of

13   reasonableness." *Strickland v. Washington,* 466 U.S. 668, 686 (1984).  The Court

14   "begin[s] with the premise that 'under the circumstances, the challenged action[ ]

15   might be considered sound trial strategy.'" *Cullen v. Pinholster,* 131 S.Ct. 1388,

16   1404 (2011) (quoting *Strickland,* 466 U.S. at 689).  The Court "affirmatively

17   entertain[s] the range of possible reasons . . . counsel may have had for proceeding

18   as they did." *Id.* at 1407.  "Counsel should be strongly presumed to have rendered

19   adequate assistance and made all significant decisions in the exercise of reasonable

20   professional judgment." *Id.* at 1403 (quoting *Strickland*, 466 U.S. at 690) (internal

21   quotation marks omitted).

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 9

Second, a defendant must show that his counsel's alleged deficient performance prejudiced the defense. To meet this standard, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Mr. Smith claims that Mr. Campbell provided ineffective assistance of counsel based on several alleged failures: to timely obtain and review all relevant discovery; to interview witnesses; to review and admit relevant evidence; to investigate relevant case law; to pursue a lack of specific intent defense at trial; to pursue a good faith or advice of counsel defense; to present any defense at all; to make a compelling closing argument; to object during the United States' closing argument; to move for a mistrial; to effectively cross-examine witnesses; and to prepare or investigate the case.

Mr. Smith has not informed this Court of what evidence or which witnesses Mr. Campbell should have called that would have changed the outcome of his trial. Mr. Smith's failure to do so prevents him from establishing prejudice related to Mr. Campbell's alleged failure to timely obtain and review all relevant discovery, to interview witnesses, to review and admit relevant evidence, to investigate relevant case law, to prepare or investigate the case, or to present any defense at all.

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 10

1    Additionally, Mr. Smith cannot show prejudice based on Mr. Campbell's

2    failure to pursue a lack of specific intent defense at trial because the United States

3    presented overwhelming evidence, much of it comprised of e-mails written by or to

4    Mr. Smith himself, that Mr. Smith was aware of the illegality of his conduct and

5    intentionally attempted to evade authorities by pretending that MMS was a water

6    purification product rather than a drug.  Mr. Smith fails to identify any specific

7    evidence that Mr. Campbell could have presented that would have shown that Mr.

8    Smith did not intend to defraud or mislead the government.  The Court rejects Mr.

9    Smith's allegation that simply arguing a lack of intent would have changed the

10    outcome of Mr. Smith's trial in the face of overwhelming evidence to the contrary.

11    Similarly, Mr. Smith cannot show prejudice from Mr. Campbell's alleged

12    failure to pursue a good faith or advice of counsel defense at trial.  To be entitled to

13    receive a jury instruction on advice of counsel, a defendant must show:  (1) the

14    defendant made a full disclosure of all material facts to his or her attorney, (2) the

15    attorney advised the defendant on a specific course of conduct, and (3) the

16    defendant relied on this advice in good faith.  *United States v. Ibarra-Alcarez*, 830

17    F.2d 968, 973 (9th Cir. 1987).

18    Mr. Smith argues that he was "ripped off" by a company called the Pro-

19    Advocate Group that allegedly advised Mr. Smith that he could create a private

20    health care membership to avoid prosecution.  However, Mr. Smith does not

21    provide support that he was specifically advised by licensed attorneys that his

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 11

1  conduct was legal or that he relied on the alleged advice.  Instead, substantial

2  evidence supports the conclusion that Mr. Smith knew that his conduct was illegal.

3  Mr. Smith's failed attempts to evade detection or prosecution do not support an

4  advice of counsel defense, and Mr. Campbell's failure to raise the defense based on

5  those facts does not amount to ineffective assistance of counsel.

6      Mr. Smith also makes several arguments regarding closing arguments.  He

7  states that Mr. Campbell "neglected to inform the Jury in closing argument that the

8  Government had completely failed to prove Smith's knowledge, or specific intent

9  in Smith's alleged failure to register, requiring an acquittal for felony misbranding

10  on Counts 2-4."  ECF No. 750 at 25.  Even if Mr. Campbell had been allowed to

11  make this statement during closing, which is an inaccurate statement of the law and

12  therefore objectionable, Mr. Smith cannot show that the outcome of his trial would

13  have been different if Mr. Campbell had made this statement before the jury.

14  Whether Mr. Smith was aware of the lack of registration is irrelevant to whether he

15  intended to mislead authorities when he introduced misbranded drugs into

16  interstate commerce.

17      Similarly, Mr. Smith argues that Mr. Campbell should have argued that Mr.

18  Smith could not be convicted for smuggling because he was not the "importer" and

19  because his conduct did not rise to the level of a conspiracy.  Both arguments are

20  based on misperceptions of the law, as previously addressed by this Court, and

21  neither is likely to have changed the outcome of Mr. Smith's trial given the

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 12

1  overwhelming evidence that he spearheaded the entire scheme to sell MMS as a

2  drug.

3      Mr. Smith also argues that counsel for the United States made an

4  impermissible statement during closing argument, namely, that Mr. Smith "filled

5  out" the shipping documents.  Mr. Smith cites to a portion of the transcript in

6  which Mr. Parisi stated, "Look at the words he said in his emails, the false

7  paperwork he filled out, and he sent to his suppliers and the FDA and everyone

8  else."  Tr., ECF No. 705 at 96-97.  Mr. Parisi did not state that Mr. Smith

9  personally filled out the shipping documents.  Moreover, Mr. Parisi previously had

10  discussed in his closing argument who did in fact fill out the shipping documents.

11  ECF No. 705 at 44 ("Now, during cross examination in the defense case, Mr.

12  Campbell made it clear that the paperwork was filled out by someone named Stan

13  Nowak; and that may be true.").  Therefore, Mr. Smith cannot show that the

14  outcome of his trial would have been different had Mr. Campbell objected to this

15  statement.

16      Similarly, Mr. Smith contends that Mr. Parisi's use of the word "imagine"

17  was impermissible and prejudicial to his defense.  Yet Mr. Parisi simply employed

18  a trial tactic during closing argument in which he asked the jury to visualize the

19  facts and evidence that they had already seen and heard.  Nothing about Mr.

20  Parisi's use of this tool was impermissible during closing argument, and Mr.

21

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 13

Campbell's failure to object to it does not rise to the level of ineffective assistance of counsel.

Mr. Smith next alleges that a key government witness testified that the FDA had received "several reports of harm" in direct contravention of a Court order excluding such evidence. Mr. Smith does not cite to the record, and the Court does not recall this testimony. Moreover, if the testimony did actually occur, Mr. Smith cannot establish prejudice because evidence of the harm associated with MMS was contained in the consumer health reports that already were admitted exhibits.

Mr. Smith also contends that the United States elicited false testimony from Joe Lachnit, who allegedly stated that Linda Bridgeman was a "janitor" and that he was "merely a consultant for PGL." Mr. Smith maintains that Mr. Campbell should have objected and moved for a mistrial on the basis of these alleged misrepresentations. However, there is no basis for this Court to conclude that either statement would have had any effect on the evidence presented, the law as it applied to that evidence, or the jury's determination. Mr. Smith cannot show that Mr. Campbell's failure to object to testimony of such minor importance fell below an objective standard of reasonableness or that the desired objections would have changed the outcome of Mr. Smith's trial.

Additionally, Mr. Smith contends that one government witness, Matthew Darjany, was sleep deprived and under the influence of several medications when he testified. Mr. Smith attached to his Motion for Judgment of Acquittal a

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 14

1    "preliminary declaration" allegedly signed by Mr. Darjany stating the same.  The

2    declaration was not made under oath and is not notarized, and the meaning of a

3    "preliminary declaration" is unclear.   However, the relevant issue is that Mr.

4    Smith fails to show that Mr. Campbell was aware of Mr. Darjany's alleged

5    condition.  Mr. Campbell is held to the standard of a reasonable attorney.  Without

6    proof that Mr. Campbell was aware of Mr. Darjany's allegedly impaired condition,

7    which was not apparent to the Court when watching Mr. Darjany testify in open

8    court, Mr. Campbell's failure to cross-examine Mr. Darjany regarding an unknown

9    condition does not constitute ineffective assistance of counsel.

10          Finally, Mr. Smith moves for a new trial based on the argument that the

11   Court denied Mr. Smith's constitutional right to effective assistance of counsel

12   when it permitted Mr. Campbell to proceed to trial despite Mr. Campbell's

13   statements to the Court that he was unprepared.  The Court has addressed this

14   claim extensively both in open court and in written orders.  The Court conducted

15   repeated *Faretta* hearings with Mr. Smith throughout the pendency of this case.

16   Mr. Smith insisted on representing himself until immediately before trial was to

17   commence.

18          The Court will not grant a new trial based on Mr. Smith's last minute

19   decision to have appointed counsel nor based on the Court's denial of a seventh

20   continuance after trial had been delayed repeatedly and after the Court had warned

21   both Defendant and stand-by defense counsel more than two months earlier that no

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 15

1   further continuances would be granted barring exceptional circumstances.

2   *See, e.g.*, ECF No. 532 at 3.  It is unreasonable for Mr. Smith to complain that he

3   was denied effective assistance of counsel and that the counsel whom he requested

4   on the eve of trial had insufficient time to prepare when Mr. Smith previously

5   rejected any counsel.  Any prejudice that Mr. Smith alleges he suffered as a result

6   of the appointment of counsel was prejudice that he caused himself and does not

7   create a basis for acquittal or a new trial.

8           Accordingly, **IT IS HEREBY ORDERED** that Defendant Louis Daniel

9   Smith's Motion for Judgment of Acquittal or in the Alternative for a New Trial,

10  **ECF No. 717**, is **DENIED**.  **The Court will not reconsider this Order**.

11          **DATED** this 23rd day of September 2015.

12

13                              _s/ Rosanna Malouf Peterson_
                                ROSANNA MALOUF PETERSON
                                Chief United States District Court Judge

14

15

16

17

18

19

20

21

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL ~ 16